People of the State of Illinois, Plaintiff-Appellee, v. Paul Moore, Defendant-Appellant.

Gen. No. 50,528.

First District, Third Division.

October 20, 1966.

Rehearing denied November 18, 1966.

Amiel G. Hall and Howard T. Savage, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a conviction after a jury trial for burglary with intent to commit the crime of theft.

Defendant was sentenced to not less than three nor more than six years in the penitentiary.

The defendant contends (1) that the trial court erred in overruling his motions to suppress evidence allegedly obtained by an illegal search of his person, and (2) that the evidence is insufficient to sustain the verdict.

About 10:30 a. m. on July 30, 1964, two Chicago police officers, while patrolling their beat in a squad car, noticed a single car parked in what they termed a "desolate area." One side of the street, the side on which the car was parked, was a railroad embankment. As the officers passed the car, they noticed that there was no license plate attached to the rear of the car. They stopped and approached the auto, whereupon they saw defendant lying down in the front seat. The officers informed defendant of the license plate violation and asked him to step out of the car and show identification of himself and of ownership of the car. The defendant produced a wallet, but before he gave it to the officers said, "Oh, this isn't my wallet." One of the officers had seen the name "James Tabbs" in the wallet while it was in defendant's hands. Defendant then produced a second wallet which contained a traffic violation summons which identified him as Paul Moore. After examining the second wallet, the officers began to inquire about the first wallet, which defendant said belonged to his cousin. The police asked him what was in the wallet and defendant showed them three checks. The officers then took defendant to the police station, where he said he had found the wallet.

It was established that the checks were of one Mr. Anthony Motors, Inc., a used-car dealership for which defendant had worked. His employment there was for a period of three or four months, and had terminated early in July, 1964. The testimony indicated that, sometime between closing time July 25 and an employee's arrival July 26, the side window of Mr. Anthony Motors, Inc. was broken and someone had entered the building

328

through the window and left by the rear door. Several items were taken at that time, including a checkmaster and some blank checks, which latter were of the same type as those found in defendant's possession at the time of his arrest. The checks were apparently filled in with printing and perforations from the corporation's missing checkmaster, and with writing of persons other than those authorized to sign the corporation's checks.

Two friends of defendant testified that he had spent the night of July 25 and the morning of July 26 at home. It was the burglary of that date of which defendant was convicted.

Another friend of defendant, a minister, also testified on Moore's behalf, stating that he had been with Moore on July 27 when the latter found the wallet and checks.

■■ Defendant first contends that the checks taken from him were erroneously admitted into evidence, in that they were discovered and seized from him while he was unlawfully under arrest, and as a result of an unlawful search and seizure, even if the arrest were valid. Defendant, at the time of the arrest, was in possession of an automobile with no license plate affixed to the rear of the car. The absence of such a license plate is a violation of a city ordinance (Municipal Code of Chicago, 1963, par 27-354(a)) and of a state law (Ill Rev Stats, 1963, c 95½, pars 3-411, 3-701). Possession of such a car justifies police inquiry into ownership of the car and into identity of the possessor thereof. Defendant contends, however, that this minor traffic violation does not justify a search of the occupant of the car, relying upon People v. Watkins, 19 Ill2d 11, 166 NE2d 433, which held that minor traffic violations, alone, cannot be the basis of a complete search of the person. However, the court qualified that statement by saying at page 18:

"They (courts) have refused to establish a uniform rule to govern all searches accompanying valid ar-

329

rests, but rather have examined the nature of the offense and the surrounding circumstances to determine whether the search was warranted. (Citing cases.)"

The court further said at page 19:

"But the violation involved in this case was parking too close to a crosswalk,—the kind of minor traffic offense that ordinarily results in 'a parking ticket' hung on the handle of the door of the car, telling the offender that it is not necessary to appear in court if he mails in the amount of his fine. Such an offense does not, in itself, raise the kind of inferences which justify searches in other cases. Some traffic violations would justify a search. The total absence of license plates, for example, as in People v. Berry, 17 Ill2d 247, could reasonably suggest a serious violation of the law, as could an obscured license plate upon a car being driven in the early morning hours, as in People v. Esposito, 18 Ill2d 104."

In People v. Thomas, 31 Ill2d 212, 201 NE2d 413, the police officers stopped defendant's automobile at 5:00 a. m. because one or both taillights were not operating. When asked for a driver's license, defendant replied that he did not have one and that he had just gotten out of jail. The officers then arrested him and searched defendant and the car. The search of the defendant was held to have been justifiable although the officers had initially stopped the automobile for a minor traffic violation.

The court in People v. Hayden, 58 Ill App2d 420, 208 NE2d 309, upheld as constitutional a search of defendant after he had been stopped by police officers for failure to have a rear license plate light. The court said at page 422:

"In view of the circumstances surrounding the arrest, i. e., no license plate light, no city vehicle sticker,

and the inability of either defendant to produce evidence of the ownership of the automobile, we hold that the search of the defendant and the automobile was justified in order to attempt to ascertain proof of ownership and for the officers' protection."

In this case the violation was one which could rouse suspicion as to the ownership of the car, and the acts of defendant regarding the two wallets further added to the officers' suspicion. The above cases are therefore in point and we hold that the search of Moore was reasonable and constitutional.

Defendant also contends that the evidence is insufficient to sustain the verdict in that the state did not prove that the three checks introduced into evidence were taken in the burglary of which defendant was convicted, and that the evidence did not prove his guilt beyond a reasonable doubt. While it is true that there was evidence that Mr. Anthony Motors, Inc. had been burglarized on other occasions than the one in this case, there was no evidence that checks had been taken in those other burglaries. Among the things missing after the burglary in this case were checks. One of the owners testified that the checks in evidence were the same as those taken in this burglary.

 There was evidence that James Tabbs' wallet had been taken from him May 13th, more than two months prior to the burglary in this case. At the time the police recovered the wallet it contained the three checks in evidence, one of which was made out to and endorsed in the name of Tabbs. This check was dated July 25th. Sam Lazzara testified that he had made out payroll checks on that date, but did not then or ever have occasion to make a check payable to James Tabbs. Defendant argues that the handwriting on the checks was not his and, since the checks were blank when stolen, this proves that someone else had possession of the checks after they were stolen. Nonetheless, defendant was found in pos-

331

session of the checks, and the writing proves only that defendant must have shared possession. Joint possession has always been held to satisfy the requirement of the rules of evidence of theft. People v. Reynolds, 27 Ill2d 523, 190 NE2d 301. The law does not speak in terms of continuous possession, but rather of recent possession. This requirement was fulfilled by the checks being found in defendant's possession only five days after the burglary.

 Finally, the evidence of alibi and finding the wallet and checks was provided by friends of defendant. It is the duty of the jury to determine the credibility of the witnesses and the weight to be given their testimony, and unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of defendant's guilt, the finding of the jury will not be disturbed. People v. Reaves, 24 Ill2d 380, 183 NE2d 169.

Because we find that the rulings on the motions to suppress were not erroneous, and because we find no merit in the contention that the evidence does not support the verdict, the judgment of the trial court must be affirmed.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.