**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Maurice A. JACKSON, Defendant-**
**Appellant.**

**No. 17332.**

United States Court of Appeals,
Seventh Circuit.

July 22, 1970.

Rehearing Denied Sept. 8, 1970.

---

Robert S. Bailey, Chicago, Ill., for defendant-appellant.

Thomas A. Foran, U. S. Atty., Lawrence Cohen, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before CLARK, Associate Justice, Retired,[*] SWYGERT, Chief Judge, and FAIRCHILD, Circuit Judge.

CLARK, Associate Justice, Retired.

Appellant stands convicted of the interstate transportation of a counterfeit Trans World Airlines, Inc. refund check in the amount of $756.81 and drawn on the 1st National Bank of Kansas City, Missouri, in violation of 18 U.S.C. § 2314.[1] This appeal raises three issues: (1) the validity of a warrantless on-the-scene search of his automobile and the seizure of evidence therefrom; (2) the admissibility of the results of an interrogation of appellant conducted by the arresting officers at the scene of arrest and without warning or waiver; and (3) the fairness of the trial in the light of the cumulative effect of repeated references during the trial to other crimes and acts of the appellant. We have concluded that only the second contention has merit and that the error with regard to it is beyond reasonable doubt harmless and, therefore, affirm the judgment.

### I.

Three Chicago police officers were patrolling in a marked police car on Marquette Road in Chicago when they noticed a car driven by appellant did not display a state license on its front bumper but did have one on the rear. The officers checked this license number against their daily "hot sheet" list of stolen cars and found it differed only one digit from a license plate number on the

---

[*] The Honorable Tom C. Clark, Associate Justice, United States Supreme Court, Retired, is sitting by special designation.

1. § 2314 Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered or counterfeited securities * * * knowing the same to have been falsely made, forged, altered or counterfeited * * * shall be fined not more than $10,000 or imprisoned for not more than ten years, or both.

list. They motioned the appellant to stop his car and radioed the police communications center requesting information as to the appellant's license plate. Police Officer Waters approached appellant's car after it came to a stop just ahead of the police car and asked appellant, who had alighted from his car, to produce his driver's license. The latter produced a traffic ticket with a past court date stamped upon it which invalidated it as a driver's license. Appellant said that he owned the car but could not locate the title paper identifying its ownership and was, therefore, placed under arrest. Waters then searched him, finding $400 in cash, and had him sit in the rear seat of the police car. As Waters himself was getting in the police car, the police communications center reported over the police radio that the license number on appellant's car was not registered to that car. A search was then made of the appellant's car which uncovered two portions of rolled marijuana cigarettes; a counterfeit Trans World Airline refund check for $821.47 payable to Samuel Boston; two bank money orders of $100 each drawn on the Beverly Bank of Chicago; a check drawn on Coleman's Service Station without a payee on it in the amount of $213.89; a check drawn on Top Value Foods, Inc. for $137.53 and a bank book with a savings account record of the Beverly Bank. Upon questioning, the appellant, who remained seated in the police car, admitted ownership of all of the items; that he was the Samuel Boston named in the TWA check and that he resided in Room 230 at the Zanzibar Motel in Chicago. At the conclusion of this interrogation, appellant inquired of the three officers: "Is there something we can do about this" and stated that he had $100 to offer. The inquiry was ignored; however, on the way to the police station in the police car, appellant asked that the car be pulled over to the curb, that he had something to tell the officers. Upon this being done, appellant suggested to the officers: "we might possibly make some financial arrangements and he stated he would like to * * * he had $400 he would like to give us to forget the arrest." He was told that the officers were not interested and upon reaching the station he was booked on three traffic violations. The appellant's car was impounded in the Sheriff's custody after a hearing.

This indictment was returned on July 2, 1968. The proof established that the check described in the indictment was a counterfeit and that it moved in interstate commerce from Chicago to Kansas City for collection after being cashed on January 25, 1968, and $150 thereof deposited to an account in the name of Samuel P. Boston at the Beverly Bank. The account in which it was deposited was opened on January 3, 1968, and the account signature card bore the latent fingerprint of the appellant upon it. The card was in the same handwriting as the signature on the indictment check as well as the deposit slip on which the $150 of the check was deposited to the Boston account and the balance given to the party making the deposit. The indictment check was in due course sent by the Beverly Bank to the First National Bank of Kansas City, Missouri, where it was rejected and returned unpaid.

The real Samuel Boston was produced as a witness. The evidence revealed that he also had an account at the Beverly Bank in the name of Samuel Boston dating back to 1966. He denied having any connection with the indictment check; however, he testified that he had become drunk while on a weekend party, had gone outside the tavern where the party was in progress to sit in a friend's car and went to sleep. While asleep he was robbed of his wallet containing some money, his Social Security card, driver's license, a few cards from the Beverly Bank and some check stubs. The evidence also showed that the Samuel P. Boston bank account in which $150 of the proceeds of the indictment check was deposited bore the identical Social Security number of the real Sam Boston

whose Social Security card had been stolen.

After the appellant was arrested on the instant charge, he made a statement to a Special Agent of the Federal Bureau of Investigation in which he admitted that he "purchased two or three TWA refund checks and some other stuff for $250.00" He claimed the seller was a person by the name of Black whom he described but could not give his address or whereabouts. Appellant also admitted that he had drawn the $400 found on his person when arrested by the Chicago police officers on January 25, 1968, from his account in the bank. However, he did not know the name of the bank and later repudiated this statement. When asked if he cashed the indictment check, the appellant replied that he did not but that he had purchased the check and two others and knew that it was cashed. The appellant offered no testimony at the trial.

## II.

The appellant cites Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964), Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and Dyke v. Taylor Implement Manufacturing Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968) as supporting his motion to suppress the evidence found in his car. We do not find these authorities apposite. As Mr. Justice Black said in *Preston* the "search was too remote in time and place to have been made incidental to the arrest. * * * There was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime. * * * Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction." *Chimel* involved an entirely different problem. There it was a house that was searched without a war-rant. Mr. Justice Stewart took pains to point out that nothing decided in *Chimel* affected the long recognized rule with reference to automobiles and other vehicles. See 395 U.S. fn. 9 at p. 764, 89 S. Ct. 2034. In *Dyke* the Court never reached the point involved here, *i. e.*, whether the failure of the officers to search appellant's car immediately upon arrest precluded the later search. However, *Dyke* did adhere to the established rule of the cases that a warrantless search of an automobile may be made where "officers have reasonable or probable cause to believe that they will find the instrumentality of a crime or evidence pertaining to a crime. * * * *"
391 U.S. at p. 221, 88 S.Ct. at p. 1475.

 In our view the recent case of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 decided by the Supreme Court on June 22, 1970, is dispositive of appellant's point. There Mr. Justice White found that the rule of permissibility extended to "a warrantless search, based on probable cause, of an automobile which, having been stopped originally on a highway, is parked outside a court house." This is a far cry from this case where the officers while still on the scene of the arrest were informed by police radio that the single license plate on appellant's car was in fact registered to another car and owner. This notice itself required a search of the car to find the ownership papers at the least. As was said in *Chambers* the "blue station wagon could have been searched on the spot when it was stopped. The probable cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." In this case appellant does not attack his arrest; given probable cause for it the search of the car on

the spot was permissible.[2] Certainly after the police radio reported that the single license plate was spurious there was even more reason for the officers to search appellant's car. In addition to driving on an invalid past due traffic ticket appellant failed to have any title papers to the car he drove and it had only one license plate which was registered to another car owned by a different person. In addition he had a large sum of cash on his person. The officers being experts in the practice of car thieves would naturally suspect such a situation. The search of the car was compelling under the circumstances and was fully justified not only to find any instruments of the indicated crime but also any evidence pertaining to a crime, such as title papers, ownership, use and possession of the car.

### III.

■ Appellant's second point is a stubborn and recurring one. Although Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, has been on the books of the Supreme Court since 1966 and has been publicized more widely than any opinion of the Court since Brown v. Board of Ed. of Topeka, Shawnee County, Kan., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the mandate of the case is followed in the breach. The police just will not give the warnings required and the prosecutors continue to present the resulting illicit evidence to juries. The fear seems to be that if the officer warns the subject, the latter will refuse to talk. This case is a typical example. While the officers certainly knew or should have known the warning requirements of Miranda, they made no effort to comply, and the prosecutor insisted on presenting the illicit statements to the jury.

The government very commendably now admits that the warnings of Miranda should have been given and that the statements were therefore inadmissible in evidence. But the government insists that the resulting error was harmless. We agree that the warnings should have been given and that the trial court erred in admitting the statements of the appellant. Orozco v. Texas, 394 U.S. 324, 329, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). The time may well come if the police and the prosecutors continue to ignore Miranda, that the courts will have to reconsider the application of the harmless error doctrine to Miranda warnings. Compliance with Miranda does not result in the suspect "clamming up." Indeed, in this case appellant when arrested by the FBI some six months after his arrest by the Chicago police was given the Miranda warnings and discussed his case at length.

The evidence here is overwhelming. The appellant had beyond question devised a scheme to defraud by issuing counterfeit checks and cashing them through spurious bank accounts. The TWA witnesses fully developed this before the jury; in addition, the bank witnesses filled in the necessary links to perfect the picture. The uncontradicted evidence was that appellant had cashed two TWA checks with the same serial number at Chicago banks. The appellant himself nailed this scheme down by admissions to the FBI that he bought the TWA checks for $250 and knew that the indictment check was cashed. While he did not admit that he cashed the in-

---

**2.** The traffic offenses being committed by appellant justified the search of the car at the time of arrest. The offenses were punishable by a fine as well as jail sentences for as long as one year. The nature of one of the violations, i. e., the use of fictitious license plates was recognized by the Illinois legislature as a common practice among car thieves. Searches incident to arrest for the purpose of ascertaining ownership have long been recognized. See United States v. Owens, 346 F.2d 329, 331–332 (1965); Welch v. United States, 361 F.2d 214, 215 (1966); People v. Hayden, 58 Ill.App.2d 420, 208 N.E.2d 309 (1965); People v. Moore, 76 Ill.App.2d 326, 331, 222 N.E.2d 95 (1966); People v. Brown, 38 Ill.2d 353, 357–358, 231 N.E.2d 577 (1967); People v. Galceran, 178 Cal.App.2d 312, 2 Cal. Rptr. 901 (1960).

dictment check, his fingerprints were found on the account-signature card at the bank where $150 of the proceeds of the check were deposited to an account and all of the handwriting on the checks, the account card and the deposit slip was the same. Moreover, within 2½ hours after this $150 deposit was made, appellant was arrested with the balance of the indictment check in cash and money orders on his person and the spurious bank book and another counterfeit TWA check with the same serial number and payable to the same person in his possession. Later he admitted to an FBI agent that he had just drawn the $400 from his bank account before his arrest. In the light of this evidence, one wonders why the prosecutor placed the illicit evidence before the jury. In so doing he placed his case in jeopardy. Prosecutors must refrain from such practices.

All of the evidence outlined above was uncontradicted. None of it came from the statements of the appellant to the Chicago police officers on his original arrest. Nor did it come from leads obtained from those statements. The error, therefore, does appear to be harmless beyond a reasonable doubt. This Circuit has only recently upheld jury verdicts in three cases of some similarity. United States v. Sutt, 415 F.2d 1305 (1969); United States v. Wick, 416 F.2d 61 (1969) and United States v. Franke, 409 F.2d 958 (1969). "Harmless error" is swarming around the 7th Circuit like bees. Before someone is stung, it is suggested that the prosecutors enforce *Miranda* to the letter and that the police obey it with like diligence; otherwise the courts may have to act to correct a presently alarming situation.

### IV.

■■ Appellant's final contention is that he was deprived of a fair trial by the repeated reference in the government's evidence to other crimes, offenses and charges. We need not burden the opinion with a detailed consideration of each of these contentions. None of

them was brought to the attention of the trial court in a fair trial context and objection to their introduction in evidence was made only to two of them, *viz.* the bribery offers and the police officer testimony indicating that appellant's car was a stolen one. As to the former, appellant claims the bribery evidence was of a separate crime which was not charged. However, this evidence bore on the appellant's state of mind, "guilty knowledge, intent and motive" and was clearly admissible, United States v. Wall, 225 F.2d 905, 907 (1955). Also see Rule 4–04(b) Preliminary Rules of Evidence for the United States District Court and Magistrates. The question as to whether the car appellant had was stolen was not mentioned by the police officers until cross-examination by the defense. In an effort to show that the search of the car was unjustified, defense counsel inquired of Officer Morrison if the central police radio had advised that the car was not stolen. The officer answered "yes." The officer later explained his answer by testifying that a car might be stolen and yet not be reported. The prosecutor, in an effort to strengthen the justification of the search, asked Officer Morrison whether it was usual for a car to carry a license plate not assigned to it. His answer was "no." The prosecutor then inquired what it suggested to him as a police officer and he answered, "That the car might be stolen." It appears proper for the prosecutor to make such an inquiry on re-direct. Indeed, the defense had opened up the area in cross-examination and had successfully objected to questions not relevant to the reasonableness issue. This indicated that both the court and the defense considered this an appropriate area for questioning.

■ The remaining objections have to do with the testimony concerning the traffic offenses on which appellant was arrested, the counterfeit TWA check as well as the other two found in his car, the daily hot-sheet on stolen cars, the real Samuel Boston being robbed of his wallet while in a drunken stupor and the

occasions when the FBI contacted appellant at the Criminal Courts Building. The fact that defense counsel never objected to any of this evidence on the grounds of prejudice indicates that his belated claim of unfairness now has no merit. However, we have examined each and find no error. The evidence was either directly relevant, was closely related to the offense charged, was in proof of a plan or scheme or was purely happenstance as in the contacts at the Criminal Courts Building. Each is denied and the judgment is

Affirmed.