THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RALPH BELLAMY, Defendant-Appellant.

(No. 55247;

First District—November 9, 1972.

James J. Doherty, Public Defender, of Chicago, (Ian Levin, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and James R. Truschke, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

In January, 1969, the defendant, Ralph Bellamy, was indicted for the offenses of murder, attempted murder and two counts of armed robbery. Following a jury trial he was found guilty of all the offenses charged. He was sentenced to the Illinois State Penitentiary for a period of 25 to 50 years for each offense of armed robbery and for a period of 100 to 199 years for the offense of murder, these sentences to run concurrently. Defendant was also sentenced to a term of 15 to 20 years for the offense of attempted murder, this sentence to be served consecutively to the above concurrent sentences. In this appeal the defendant alleges that certain evidence introduced at trial should have been suppressed, because it was seized in violation of his fourth and fourteenth amendment rights against unreasonable search and seizure; that the sentence of 100 to 199 years for murder is excessive; and that the imposition of a consecutive sentence for attempted murder was improper and that the sentence itself is excessive.

We affirm.

The pertinent facts adduced at trial are as follows: On December 27, 1968, Officers Ferguson and Cambric of the Chicago Police Department were driving north in a marked squad car through the 3800 block of Indiana Avenue in Chicago when they noticed three men standing in a group on the sidewalk. Ferguson, who was driving, stopped the car and

both officers stepped from the squad car and approached them. The three men cooperated with the officers in their efforts to make a "pat down" for weapons. Ferguson patted down the defendant Bellamy and, finding nothing, allowed him to leave. The defendant walked away from the scene toward a nearby barber shop. The second man was patted down and found to be free of weapons. When the third man, Sanders, was patted down, Officer Ferguson found a revolver, and Sanders was arrested. As the two officers and Sanders proceeded toward the squad car, the defendant reappeared, this time concealing a gun held in his right hand. The defendant leveled the gun at the officers and told Sanders to take Cambric's gun while he took Ferguson's gun. Sanders told the officers to put them in the squad car as if they were going to arrest them. Upon reaching the police car, Cambric pulled a second gun that he had concealed on his person, and both Sanders and the defendant began firing at Cambric.

Cambric testified that he did not fire his weapon immediately but ducked behind the police car. He came up and fired one shot. When Cambric rose a second time to fire, he saw that the defendant held two guns at Ferguson's back while the officer was in a crouched position as if he were touching his toes. While the guns were pointed at Ferguson, Cambric heard shots from either one or both of the guns. The next time Cambric rose Sanders was no longer in sight, and he saw Officer Ferguson lying in a pool of blood. Further evidence revealed that Officer Ferguson had been shot six times: twice in the back, once in the face, twice in the right arm and once in the leg.

Prior to trial a hearing was held on defendant's motion to suppress certain evidence. The evidence adduced at this hearing discloses that the defendant was arrested in Logansport, Indiana, on December 28, 1968, one day after the shooting. Officer Powell and Officer Jackson of the Logansport Police Department testified that while on patrol during the morning of December 28, they observed an automobile weaving as it proceeded down a Logansport street. They followed the vehicle until they observed the driver, later identified as the defendant, weave dangerously in front of a passing vehicle. The officers stopped the traffic offender, and Officer Jackson went to the driver's side of the car and spoke to the defendant. The defendant identified himself as Fred Kelley and produced a drivers license bearing that name. The license issued to Fred Kelley described him as a man 55 years old, five feet, nine inches tall. The defendant appeared to be about 30 years old and over six feet, four inches tall according to Jackson. When asked his address the defendant recited the correct street name but stated a house number that was not the same as that appearing on the license.

On the basis of these discrepancies, the officers requested a radio inquiry as to whether the car the defendant was driving had been reported stolen in either Indiana or Illinois. Approximately 20 minutes later the officers learned that the car had been reported stolen in Illinois. The defendant was immediately placed under arrest, advised of his rights, searched, handcuffed and placed back in the rear seat of the police car.

Officer Jackson testified he then searched the stolen car "to check for ownership and to inventory any contents found therein prior to having the vehicle towed." During the search Jackson discoverd a gun under the front seat on the driver's side. The gun was seized at that time and ballistics evidence later revealed that this gun was the same weapon used to kill Officer Ferguson the day before. The gun was eventually admitted into evidence at trial over the objection of the defendant.

The defendant first argues that the search of the stolen car was violative of his fourth and fourteenth amendment rights against unreasonable search and seizure; and, therefore, the gun seized should have been suppressed prior to trial. Defendant states that the only justification for a warrantless search of an automobile is reasonable grounds to believe that the car contains the instrumentalities of or evidence pertaining to a crime, and he cites three cases in support of that proposition. (*Carroll v. U.S.* (1924), 267 U.S. 132; *Dyke v. Taylor Implement Co.* (1968), 391 U.S. 216; *People v. Erickson* (1964), 31 Ill.2d 230, 201 N.E.2d 422.) Defendant reasons that since the only facts apparent to the Logansport police officers which set defendant apart from an ordinary motorist were that (1) he was in possession of a stolen car, and (2) that he did not match the description on the drivers license, they therefore could not have had the reasonable grounds to believe that the car contained instrumentalities or evidence of a crime.

■■ We do not agree, and we find that on the basis of those facts presented the officers did have reasonable grounds necessary to conduct a search of the car in order to find evidence pertaining to the crime for which the defendant was arrested (*i.e.*, car theft) and that was their intention at the time of the search.

The cases cited by defendant are distinguishable from the instant case. In *Carroll* and *Dyke*, there was no question as to the possible theft of the cars that were searched. In *Erickson*, the ownership of the car was in question at the time of the arrest of the defendant, but the facts disclose that the search was made to uncover suspected stolen goods and had no connection with any attempt to ascertain ownership of the vehicle.

A case more like the instant case is *United States v. Jackson* (7th cir. 1970), 429 F.2d 1368, in which the defendant was stopped for failure to display an Illinois license plate on the front of the vehicle he was

driving and subsequently arrested when he could not locate the title papers identifying the ownership of the vehicle. After it was learned, via the police radio, that the one license plate on the vehicle was not registered to that car, the arresting officers searched the car and discovered portions of two marijuana cigarettes, a counterfeit check and other questionable commercial paper. The defendant was convicted of the Federal crime of interstate transportation of a counterfeit check and on appeal alleged that the search of his vehicle violated his rights against unreasonable search and seizure. In an opinion by the retired Supreme Court Justice Tom C. Clark, the court said:

> "In this case appellant does not attack his arrest; given probable cause for it the search of the car on the spot was permissible. Certainly after the police radio reported that the single license plate was spurious there was even more reason for the officers to search appellant's car * * *. The officers being experts in the practice of car thieves would naturally suspect such a situation. The search of the car was compelling under the circumstances and was fully justified not only to find any instruments of the indicated crime but also any evidence pertaining to a crime, such as title papers, ownership, use and possession of the car. (429 F.2d at 1371-72.) See also, *People v. Brown* (1967), 38 Ill.2d 353, 231 N.E.2d 577; *People v. Hayden* (1965), 58 Ill.App.2d 420, 208 N.E. 2d 309."

Certainly the circumstances in the instant case are even more compelling than in *Jackson*. Here the Logansport officers had an official police report that the car had been reported stolen and thus the reasonable grounds necessary to believe that a search of the stolen car would reveal evidence pertaining to the crime of car theft. Here, as in *Jackson*, the search revealed evidence of an additional crime that the officers were not initially aware of, but this discovery does not weaken the reasonable grounds upon which the search was undertaken. The search of the stolen car that the defendant was driving is justified in order to find evidence pertaining to the indicated crime (*i.e.*, car theft) and, therefore, did not violate his rights against unreasonable search and seizure.

Next the defendant alleges that the sentence imposed upon him for the offense of murder (not less than 100 nor more than 199 years) is excessive and should be reduced. He argues that since he will be eligible for parole in eleven years, three months despite the lengthy sentence imposed upon him, the sentence is futile and counterproductive to the State's aim of rehabilitation.

■■ While it is true that the defendant will be eligible for parole long before the stated sentence expires, it is also true that appellate courts

are cautious in reducing sentences imposed by the trial judge. (*People v. Taylor* (1965), 33 Ill.2d 417, 211 N.E.2d 673.) The trial judge had a superior opportunity to observe the course of the trial and the defendant before he imposed punishment. The sentence in this case does not constitute a departure from the spirit and purpose of the law; and, therefore, we will not, on the basis of only the record on appeal, amend his decision.

Next the defendant alleges that the trial court's imposition of a consecutive sentence for the offense of attempted murder was improper. The defendant claims that the murder of Officer Ferguson and the attempted murder of Officer Cambric were parts of a single transaction and a single punishable course of conduct. We disagree.

■■ In the recent case of *People v. Pearson* (1972), 52 Ill.2d 260, the Supreme Court clarified the issue of when it is proper to impose consecutive sentences. The court stated that our statute (Ill. Rev. Stat. 1969, ch. 38, par. 1—7 (m) ), literally authorizes consecutive sentences when a person has been convicted of two or more offenses which did not result from the same conduct. Conduct is defined in our code as an act or a series of acts, and the accompanying mental state. Ill. Rev. Stat. 1969, ch. 38, par. 2—4.

■■ The facts in the instant case show that the defendant committed two separate and distinct crimes when he shot at Officer Cambric and then shot Officer Ferguson. Each offense involved separate elements and the acts were committed against separate victims. (See, *People v. Raby* (1968), 40 Ill.2d 392, 240 N.E.2d 595.) We do not mean to imply that defendant's acts were wholly unrelated in time; in fact, the evidence clearly indicates otherwise. However, the actions of the defendant in perpetrating the two offenses were not part of the same conduct as that word is defined in the statute, *supra*. Therefore, the imposition of the consecutive sentence was not improper, and the sentence imposed for the offense of attempt was not excessive. *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.

Defendant was allowed to file, *pro se*, a supplemental brief in which he alleges that numerous additional errors occurred during the course of the trial. The supplemental brief lists the page numbers of the Report of Proceedings on which the error could allegedly be found. We have reviewed the entire record in this case, paying particular attention to those pages listed by the defendant, and find no error in the proceedings.

For these reasons, we affirm the judgment of the trial court.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.