Harry Lee **BROWN**

v.

**AMERICAN CYANAMID & CHEMICAL CORP. and Young Sales Corp.**

**Civ. A. No. 2854.**

United States District Court,
S. D. Georgia,
Savannah Division.

May 24, 1973.

Julian H. Toporek, Savannah, Ga., for plaintiff.

Julian C. Sipple, Savannah, Ga., for defendant American Cyanamid.

Fred S. Clark, Savannah, Ga., for defendant Young Sales Corp.

## MEMORANDUM ORDER OVERRULING PLAINTIFF'S MOTION FOR NEW TRIAL

BREWSTER,* District Judge.

This is an action for damages for personal injuries received by plaintiff as a result of a fall while working on the construction of an addition to the plant of American Cyanamid & Chemical Corp. near Savannah, Georgia. He was engaged in trying to see that concrete being poured for the second floor of the addition was properly placed and distributed when the decking of the concrete form on which he was working gave way and allowed him to fall to the next floor below.

American Cyanamid was the owner of the premises. Plaintiff's employer, Catalytic Construction Company, was the general contractor. The forms for the concrete floor were installed by Young Sales Corp. under a subcontract from Catalytic providing for use of asbestos boards called "transite".

The plaintiff collected his workmens' compensation from Hartford Accident & Indemnity Co.; and this suit was brought to take care of the compensation carrier's subrogation claim as well as to assert his own claim for damages. Catalytic, of course, could not be sued as it was protected by its workmens' compensation insurance.

* Sitting by designation.

The plaintiff claimed that the transite boards were inadequate for the purpose for which they were intended by reason of the material from which they were made and of the manner in which they were secured to the structure. He alleged that American Cyanamid was negligent in failing to exercise ordinary care to make an adequate inspection of the concrete decking and to furnish him with a reasonably safe place in which to work, and in failing to warn him that it would be dangerous to work on the area of the transite forms between the steel i beams. Young Sales was also charged with negligence in failing to warn him, and in addition, with negligence in the installation and bracing of the transite decking. Each defendant denied the charge of negligence against it, and asserted that the plaintiff's injuries were proximately caused by his own contributory negligence, or were solely caused by certain conduct of his employer, Catalytic.

The case was submitted to the jury upon special interrogatories, and its findings were adverse to the plaintiff on all issues except his contributory negligence. Generally stated, the jury found that neither American Cyanamid nor Young Sales was negligent; that the plaintiff was not guilty of contributory negligence; and that the negligence of Catalytic, plaintiff's employer which was not a party to this suit, was the sole proximate cause of the accident.

The plaintiff's motion for new trial is predicated upon his claims that:

(a) The verdict is contrary to the law and the evidence.

(b) The evidence establishes as a matter of law that the plaintiff's injuries were the result of the joint negligence of American Cyanamid and Young Sales.

(c) The Court erred "in permitting Young Sales' attorney to read from the deposition of its own witness Kenneth Forbus, a statement made by Kenneth Forbus that he advised the superintendent for Catalytic Construction Company, Mr. Whitlock, that the forms would not hold, and further erred in allowing said defendant's attorney to read a statement allegedly made by Mr. Whitlock to Mr. Forbus that Mr. Whitlock had checked with his company's engineers and that they had said it would hold." [1]

■ The points that the verdict is contrary to the law and the evidence and that liability is established as a matter of law will not be discussed in detail. The evidence has not been transcribed at this time. If there is an appeal, it can be summarized in the briefs with appropriate references to the record. Suffice it to say that this Court is of the definite opinion that the question of liability was one of fact and that there is adequate evidence to support the jury findings. The point that the Court erred in admitting certain testimony on re-direct examination of Kenneth W. Forbus, a witness offered by the defendant Young Sales, will be discussed in more detail.

Mr. Forbus was the general foreman for Young Sales who supervised the construction of the concrete forms under the subcontract with the general contractor, Catalytic. He testified that while the forms were adequate to hold the concrete to be poured on them, it was dangerous for a person to be on the area of the transite boards between the steel i beams, instead of on the i beams themselves, while the concrete was being poured or worked, unless the decking was properly shored with angle irons. The defendants contended that after the forms had been installed in accordance with the subcontract, Forbus warned Catalytic's job superintendent, Mr. Whitelock, of such danger. On cross-examination, plaintiff's attorney, Mr. Toporek, sought to show that there were discrepancies between Forbus' testimony on the trial and that given by him in his oral deposition in regard to the conversation between him and Whitelock about the warning. In that connection, Mr. Topo-

---

1. The quotation is from the motion for new trial.

rek asked the witness if he gave the following testimony in his oral deposition:

*By Mr. Toporek:*

"Q. All right, sir. Now Mr. Sipple asked you, 'Now, what was done after you completed your portion of the work, as far as you know?' Answer: 'I told the superintendent when they put their irons in not to walk on it.' 'You told the superintendent?' 'Mr. Whitlock, Catalytic. I told him not to put their iron in there.' 'What iron do you—

"ANSWER—

"COURT: You did expressly not to put the iron in there?

"MR. TOPOREK: This is a question by Mr. Sipple, 'told him not to put their iron in there.' 'What iron do you . . ." And he was interrupted by the answer: 'Not to let their men walk on it in the middle when they put their reinforcing rod in there, rebar, because I won't let my men walk on it and I wouldn't walk on it myself and I told them that I didn't think it was strong enough. It ought to have some shoring under it.' Do you remember saying that?

"A Yes, sir, that's what I said awhile ago."

On re-direct examination, The Court permitted the defendant Young Sales to prove over plaintiff's objection what Forbus' deposition testimony was as to the reply of Whitelock to the statement contained in the above quoted questions read to the witness by the plaintiff on cross-examination. The following is quoted from the proceedings in connection therewith:

*By Mr. Sipple:*

"Q Now, Mr. Forbus, when Mr. Toporek stopped reading you had said

that you wouldn't let your man walk on it and 'I wouldn't walk on it myself, I told them I didn't think it was strong enough, it ought to have some shoring under it,' and not I but my partner, Mr. Chamlee, asked you, 'What response did he, Mr. Whitlock, make to that?' And you said—"

At this point, plaintiff's counsel made an objection, and after the Court overruled it, the following occurred:

"Q Just not to leave the jury dangling. So you told him what I just read, that you men wouldn't walk on it and you were asked what response did he make to that and you said quoting Mr. Whitlock: 'Our engineers designed it, it will hold, but I'll tell my men. Then they all put their rebar iron in there.' [2] That correct?

"A Yes, sir.

"Q You remember testifying to that effect?

"A Yes, sir."

The following quotation shows the plaintiff's objection to this testimony offered on re-direct examination:

"MR. TOPOREK: Your Honor, note our objection, as being hearsay, as testimony being offered by counsel rather than by the witness, and the witness is on the stand, and he can ask him if he recalls what he said further but I don't know under what theory he can use this or read this into the record."

The Court has been favored with briefs from each of the parties, and with six pages of transcript showing a small portion of the proceedings on cross and re-direct examinations of the witness Forbus.[3] Some allowance must be made, then, for the fact that this memorandum is based to some extent on the Court's memory, after trying several other cases.

2. The rebar iron referred to was different from the angle iron about which the witness had also testified. The angle iron he had said should have been used for shoring would have been under the transite decking so as to brace it. The rebar iron was the

reinforcing steel placed on top of the forms for the purpose of reinforcing the concrete.

3. The above quotations showing a few questions and answers during that proceeding are taken from that transcript.

The plaintiff now complains that the Court erred in admitting in evidence over his objection both the statement Forbus made to Whitelock and Whitelock's reply thereto in the conversation between them relating to the warning above mentioned. He says that such testimony was hearsay. The Court is of the opinion that no reversible error was committed for each of the following reasons:

■ (1) All the testimony was admissible because the defendants had a right to prove that Forbus warned plaintiff's employer, Catalytic, of the danger. That could be done whether plaintiff was present or not, as there was no duty on the part of either one of the defendants to give such warning to the plaintiff personally.

■ (2) The portion of the testimony about Whitelock's reply to Forbus' warning was admissible because it was a pertinent reply to a statement of Forbus brought out by plaintiff on cross-examination. The plaintiff had opened up the matter by going into a part of the conversation, and the defendants had a right to show the rest of it.

(3) If any error was committed, it was harmless.

### All This Testimony Was Admissible on the Warning Issue

The plaintiff claimed that both American Cyanamid and Young Sales were negligent in failing to warn him that it would be dangerous to stand on the area of the transite forms between the i beams during the concrete pouring process. The defendants responded that their legal duty in that respect was discharged when Young Sales warned the job superintendent of Catalytic, the plaintiff's employer, that its employees should not walk or stand on the area of the transite boards between the i beams while concrete was being poured. Counsel for plaintiff urged that anything less than a warning to the plaintiff personally was inadequate.[4]

■ When the Court first learned that the defendants' position was that they had discharged their duty to give a warning of danger to employees of Catalytic by communicating that warning to the job superintendent of such contractor, its initial reaction was that the plaintiff was correct in contending that

4. The plaintiff maintained this position even to the extent that he insisted that his theory of recovery on the ground of negligence for failure to warn could be presented only by interrogatories inquiring about whether such warning was given him personally. The Court had no brief on this question at the time, and had no opportunity to research it then. Upon such insistence, the Court submitted the interrogatories in the form the plaintiff asked (Nos. 5, 6, 11 and 12). In so doing, the Court was following "the recommended practice of submitting possible fact issues to the jury so that remand for a new trial might be obviated if on appeal this court found him in error." Malone and Hogan Hospital Foundation v. Boston Insurance Co., 5 Cir., 378 F.2d 362 (1967). One of the advantages of submitting a case on special interrogatories is that a close question can be saved for disposition on motion for judgment or motion for judgment non obstante when there is time to brief the law. Of course, this practice has to be used sparingly; and it cannot be resorted to when the interrogatory in question is inflammatory in nature. However, this was a perfect case for it. With no briefs on the point and little time to research the law, and with a Texas judge having to determine the Georgia law on a point on which good lawyers disagreed, the question could be submitted in the form followed, leaving the matter for a more definite determination on post verdict motions. If the plaintiff secured a favorable answer and if it developed that the law supported his contention that warning had to be given him personally, the Court could enter judgment for him. He could not and did not complain of failure to submit the question in the form of an inquiry as to whether the warning was given his employer. Under the evidence developed, he had no chance for a favorable finding on that issue. On the other hand, any complaint by the defendants was eliminated if the jury found in their favor on the issues of warning as submitted, or if the jury findings were unfavorable to them and they were granted a judgment n. o. v. If the Court made a mistake in either instance, the Court of Appeals would not have to order a re-trial.

such evidence would be hearsay. After reflecting on the matter, it occurred to the Court that the only practical way to give such a warning would be to a job supervisor of the employees affected. On a large construction project, one contractor might have no way of knowing who the other contractor's employees would be. Then, confusion would result from one subcontractor going around on the job giving employees of another contractor directions. Since the trial, respectable authority has been found to support these conclusions. Delhi-Taylor Oil Corp. v. Henry, Tex.S.Ct., 416 S.W.2d 390 (1967); Tyler v. McDaniel, Tex. Civ.App., 386 S.W.2d 552, 562 (1965), ref. n. r. e.; Gulf Oil Corp. v. Bivins, 5 Cir., 276 F.2d 753 (1960), cert. den. 364 U.S. 835, 81 S.Ct. 70, 5 L.Ed.2d 61; Turner v. West Texas Utilities Co., 5 Cir., 290 F.2d 191 (1961); Whitlow v. Seaboard Air Line R. R. Co., 4 Cir., 227 F.2d 57 (1955); Storm v. New York Tel. Co., 270 N.Y. 103, 200 N.E. 659 (1936); Schwarz v. Gen. Electric Realty Corp., 163 Ohio St. 354, 126 N.E.2d 906 (1955); Levesque v. Fraser Paper Ltd., 159 Me. 131, 189 A.2d 375 (1963); Hunt v. Laclede Gas Co., Mo.S.Ct., 406 S.W.2d 33 (1966); Florida Power & Light Co., v. Robinson, Fla., 68 So.2d 406; Hotel Operating Co. v. Saunder's Adm'r, 283 Ky. 345, 141 S.W.2d 260.

The following is quoted from the opinion of the Texas Supreme Court in Delhi-Taylor v. Henry, supra (416 S.W.2d, p. 394):

".    .    . While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees."

\*    \*    \*    \*    \*    \*

"On many projects there are a number of independent contractors, each employing scores of workmen. The identities of some of the workmen will change from day to day. To impose the duty on the owner or occupier of the premises to know and to warn every workman on the project of a dangerous condition would subject him to an impossible burden. Moreover, an independent contractor owes a duty to his employees to warn them of dangers on the premises where they are required to work which are known to him. This duty was recognized in *Reinle* [Galveston-Houston Elec. Ry. Co. v. Reinle, 113 Tex. 456]. 258 S. W. 803, 805. The owner or occupier should not be required to foresee and anticipate that the contractor will not discharge his duty to his own employees, and there is no sound basis for requiring that the employees should be twice warned."

Since this is a diversity action growing out of an injury which occurred in Georgia, the law of that State applies. With the library facilities available to it at this time, the Court has been unable to find a case by a Georgia court on this point; but some of the opinions above cited discuss pertinent cases from other states, and cite no Georgia case to the contrary. The best indication that this Court has been able to find on the applicable Georgia law is Whitlow v. Seaboard Air Line R. R. Co., supra. While that was a case by the Fourth Circuit, the injury there involved occurred in Georgia, and the Court of Appeals expressly recognized that the Georgia law controlled.[5] The following is quoted from that case (222 F.2d, p. 60):

"Very much in point is the case of Storm v. New York Telephone Co., 270 N.Y. 103, 200 N.E. 659, 661, in which a lineman was killed by the falling of a defective telephone pole, where notice of its unsafe condition had been given to his employer who was en-

5. "As plaintiff's injury occurred in Georgia, the law of Georgia is of course applicable . . . .." 222 F.2d, at p. 61.

gaged in replacing defective poles. In holding that this was sufficient to absolve the Telephone Company and that liability on its part could not be predicated on the failure to give notice to the lineman personally, the Court of Appeals of New York, reversing the Appellate Division, 243 App.Div. 581, 276 N.Y.S. 191, said:

" 'Did the defendant exercise reasonable care to warn the deceased lineman? The defendant notified the assistant district superintendent and the foreman of the lighting company, present at the place where the work was being performed, that the pole was in a dangerous condition and that commensurate care should be taken. A similar warning was given to the district superintendent of the lighting company. Warning of danger was thus given to all men in charge of the work and to all supervisory officials of the decedent. Frequently work is done on telegraph or telephone poles that are in a dangerous condition. It is customary for the workers to pike or guy such poles, thereby eliminating the danger. It was reasonable for the defendant to expect that the Westchester Lighting Company would employ such safety measures after it had been warned of the danger. "The risk reasonably to be perceived defines the duty to be obeyed." * * To require the defendant to bring notice home to every employee of the lighting company who might possibly be involved on this job on penalty of otherwise failing in duty would result in imposing a standard of duty exceeding reasonable bounds.' "

Under these cases, there is no question about the fact that the defendants had the right to establish that Forbus warned the plaintiff's employer of the danger in question. The only proper way to prove that was by showing the conversation of Forbus and the representative of plaintiff's employer in regard thereto. There would be no other way to determine whether the warning was adequate, and whether the plaintiff's employer understood it. The quotation above from Whitlow v. Seaboard Airline R. R. Co. contains a statement from the opinion in Storm v. New York Telephone Co., supra, the landmark case on this question of warning, that it is reasonable for a defendant to expect that the plaintiff's employer would take the necessary "safety measures after it has been warned of the danger." (222 F.2d, p. 60). If that is the law, as it appears to be, a defendant giving a warning of danger would have a right to have the jury instructed to that effect. If the defendants were entitled to have the jury instructed that they had a right to expect that, after being informed of the danger, Catalytic would warn its men, there could be no logical reason for saying that the defendants could not prove that Whitlock actually said he would warn them, thereby strengthening the basis for the assumption the defendants were entitled to make.

In addition, one of the defenses urged in this case was that the sole cause of the plaintiff's injuries was the conduct of his own employer, Catalytic. This testimony—both the statement of Forbus to Whitelock and Whitelock's reply thereto—was admissible on that issue.

*The Testimony in Regard to Whitelock's Reply to Forbus' Statement to Him*

Whitelock's reply to Forbus' statement was properly received on re-direct examination to show the entire conversation about the subject of danger and warning after the plaintiff had gone into a part of it on cross-examination of Forbus.

■ "Where a witness has been cross-examined as to a part of a transaction then the whole thereof, to the extent that it relates to the same subject matter, may be elicited on redirect examination." Harrison v. United States, 5 Cir., 387 F.2d 614 (1968). See also United States v. Miller, 2 Cir., 381 F.2d 529, 538 (1967), cert. den. 392 U.S. 929, 88 S.Ct. 2273, 20 L.Ed.2d 1387; United States v. Walker, 3 Cir., 421 F.2d 1298,

1299 (1970); United States v. Jackson, 7 Cir., 429 F.2d 1368, 1373 (1970).

The portion of the proceedings already quoted shows that on cross-examination Mr. Toporek brought out that Forbus had testified in his oral deposition that shortly after the construction of the forms had been completed, he told Whitlock not to let workmen walk "in the middle" of the forms because they were not strong enough without shoring under them. The defendants were entitled to bring out during re-direct examination that Forbus testified in the same oral deposition that Whitlock made the following reply to the statement in the portion of his deposition read by plaintiff's counsel on cross-examination: "Our engineers designed it, it will hold, but I'll tell my men." The statements of both Forbus and Whitlock were about the same subject matter—whether it would be safe for workmen to walk on the portions of the forms between the i beams, whether Forbus told Whitlock that he considered them unsafe, and whether Catalytic's employees should be warned not to walk "in the middle". Also, both statements were proper to show the adequacy of the warning. If Whitlock said he would convey the warning to his men, even though he disagreed with Forbus about whether danger actually existed, he certainly understood it; and there could, therefore, be no question about its adequacy.

The fact that the plaintiff had opened up the subject on cross-examination by interrogating Forbus about his statement to Whitlock would make Whitlock's reply to that statement admissible on re-direct examination even though the reply might not have been otherwise admissible. The following is taken from Walker v. United States, supra, at p. 1299 of 421 F.2d:

"'Indeed, the cross-examination of the witness may open the door for the admission on redirect examination of matters tending to support the case, which would not have been admissible on the case in chief. . . . The conduct of the examination of a witness on his redirect examination and whether or not a question is proper, whether or not new matter should be admitted or whether there should be an explanation or avoidance of new matter brought out in the cross-examination, are questions that are largely within the discretion of the court.'"

To paraphrase United States v. Miller, supra, the conversation was opened up by plaintiff's cross-examination of Forbus; and the defendants were not bound to let the plaintiff bring out only what he pleased and be content themselves with no more.[6]

### The Error, if any, Was Harmless

The only testimony which needs to be discussed under this heading is that portion connected with the interrogation on re-direct about Whitlock's reply to Forbus' warning, because the plaintiff himself brought out on cross-examination the testimony about Forbus' statement which provoked the reply. The question, then, under this heading is whether any prejudice resulted to plaintiff from Whitlock's statement to Forbus: "Our engineers designed it, it will hold, but I'll tell my men."

The evidence was undisputed that Catalytic's engineers designed the addition to the plant; so Whitlock's statement that they did added nothing to what was already proved beyond question. It is difficult to see how such statement could have damaged the plaintiff even if there had been no other such testimony.

If the jury had returned only a general verdict, the plaintiff might be in position to claim that he was denied a recovery on the ground that he was contributorily negligent, and that Whitlock's

---

6. ". . . [T]hat subject was opened by the defense's cross-examination of Caron, and the Government 'was not bound to let the defendant bring out only what he pleased and be content itself with no more . . . .'" United States v. Miller, at p. 538 of 381 F.2d.

statement, ". . . . but I'll tell my men.", prejudiced him on that issue. However, the jury was required to return its verdict in the form of answers to special interrogatories; and its answer (No. 13) that the plaintiff was not guilty of negligence "in standing on the transite decking between the i beam spans under the circumstances existing" forecloses any such claim. The jurors might have believed that Whitlock said that he would convey Forbus' warning to Catalytic's workmen; but, by their finding in answer to special interrogatory 13, they indicated that they believed that he did not do so. To make the finding that it did on contributory negligence, the jury had to believe the plaintiff's testimony that no one warned him of the inadequacy of the concrete forms to hold a workman.

The other portion of Whitlock's reply is that, "it [the transite decking] will hold." The only way that statement could have harmed the plaintiff would have been for it to convince the jury that the decking was adequate and that there was therefore no danger to workmen standing on it. If there was anything besides plaintiff's injuries which was established beyond question, it was that the decking was inadequate to hold workmen while concrete was being poured and that a danger existed to men working on the portion of it between the i beam spans. The accident itself was sufficient to show that. There was positive testimony from plaintiff's witness Hutchins, and from defense expert witnesses, Pernal and Forbus, to such inadequacy and danger. The case was submitted to the jury on the theory that it was dangerous for men to work concrete on the area of the forms between the i beams (special interrogatories 5, 11, 15 c). The jury's finding in answer to interrogatory 15 c was that Catalytic was negligent "in failing to warn the plaintiff, Harry Lee Brown, that it would be dangerous to work on the area of the transite forms between the i beams." It could not have made that finding if it had been of any mind other than that

the forms were inadequate and were dangerous to men working on the area of them between the i beams. These circumstances show beyond question that Whitlock's statement that the forms would hold resulted in no prejudice to the plaintiff.

\*   \*   \*   \*   \*   \*

The Court is of the opinion that there is no merit in the motion for new trial. It is accordingly ordered that it be hereby overruled.