(No. 40340.— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
ROBERT LEE BROWN *et al.,* Appellants.

*Opinion filed November 30, 1967.*

WARD, J., took no part.

GERALD W. GETTY, Public Defender, of Chicago,
(FREDERICK F. COHN and JAMES J. DOHERTY, Assistant
Public Defenders, of counsel,) for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield,
and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED

G. LEACH, Assistant Attorney General, and ELMER C. KIS-
SANE and MATTHEW J. MORAN, Assistant State's Attor-
neys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion
of the court:

The defendants, Robert Lee Brown and Robert N.
Sulauka, were tried in the circuit court of Cook County
for theft, found guilty, and sentenced to the Cook County
jail; Brown for one year and Sulauka for six months. The
appellate court affirmed the decision as to both defendants.
76 Ill. App. 2d 145.

The sole issue presented to this court concerns the cor-
rectness of the trial court's refusal to grant the defendant
Brown's motion to suppress the evidence. Although both
defendants were tried together and were represented by the
same counsel, defendant Sulauka did not join in Brown's
motion to suppress at the trial. Sulauka now urges that we
allow him to join in Brown's motion since the evidence in
question was used against both defendants.

At approximately 1:30 A.M. on September 10, 1963,
Chicago police officer Richard Corcoran and another officer
stopped an automobile driven by Brown because it had no
State license plates. When questioned by Corcoran, Brown
admitted that he had no license plates, nor a city sticker;
he was also unable to produce a driver's license. He told
the officer that he was coming from a used car lot in Chi-
cago where he had just purchased the car. Brown showed
the officer a title made out to the used car dealer where he
had allegedly purchased the automobile, but the title was
not dated nor signed, and did not contain Brown's name.
The officers then looked into the back seat of the automo-
bile and saw Sulauka asleep there. They also noticed a set
of golf clubs and some clothing for which Brown could give
no explanation. He told the officers that he was coming im-
mediately from the dealer from whom he had purchased the

car, and although going no place special at the moment, he was eventually planning to meet a girl friend in the vicinity of Rush Street in Chicago.

Sulauka, however, gave a different version of the facts when questioned by the officers. According to him, they had gone to his apartment in Lombard. after purchasing the car from the dealer and the items in the back seat were his property and Brown was helping him move to a new address.

After this conversation with the defendants, officer Corcoran made a search of the trunk and discovered two sets of golf clubs, shirts, raincoats, golf balls, and some golf shoes. The results of this search became the subject of Brown's subsequent motion to suppress which was denied by the trial court.

It has long been established that the constitutional safeguards contained in section 6 of article II of the Illinois constitution, and the fourth amendment to the United States constitution, do not prohibit all searches made without a warrant, but only those which are unreasonable, and that the determinations of the reasonableness of any given search must depend upon the facts in the particular situation. (*United States* v. *Rabinowitz,* 339 U.S. 56, 94 L. Ed. 653; *People* v. *Watkins,* 19 Ill.2d 11.) In *Watkins* we held that a search incident to an arrest is authorized when it is reasonably necessary to protect the arresting officers from attack, to prevent the prisoner from escaping, or to discover the fruits of a crime. We went on to state that the total absence of license plates on a car could reasonably suggest a serious violation of the law which would justify a search.

In *People* v. *Thomas,* 31 Ill.2d 212, we held that if circumstances reasonably indicate that the police may be dealing, not with an ordinary traffic violator, but with a criminal, then a search of the driver and his vehicle is authorized in order to insure the safety of the police officers and to prevent an escape.

Brown, while admitting in his brief that the police officers were justified in suspecting that they were not dealing with a mere traffic violator, contends, nevertheless, that the search of his trunk was unjustified. In support of this contention Brown relies on *People* v. *Lewis,* 34 Ill.2d 211. In *Lewis* the defendant was driving a 1959 Cadillac about 8:30 P.M. when he was stopped by the police for going through a red traffic light. One of the officers then noticed that the defendant and a similar 1959 Cadillac bearing defendant's license number were listed in the daily police department bulletin as being wanted in connection with a burglary. While the defendant was kept in the squad car, one officer searched the defendant's car and discovered burglary tools in the trunk. Defendant was then taken to the police station where he was given a traffic summons and he was subsequently indicted and convicted for attempted burglary and possession of burglary tools.

On appeal we reversed Lewis's conviction and held that the motion to suppress the evidence obtained as a result of the search of his trunk should have been allowed. We stated that although "the police bulletin gave the officers reasonable basis for the belief that they were dealing with more than an ordinary traffic offender  *  *  *  the particular search complained of was accomplished after the defendant was taken into custody and was therefore totally unnecessary to protect the arresting officers or to prevent escape. Nor was it possible for the defendant to dispose of evidence before a search warrant was obtained, since the police took possession of the car at the time they took custody of the defendant." *People* v. *Lewis,* 34 Ill.2d 211, 215.

On the basis of *Lewis,* therefore, Brown urges that even if the police had probable cause to believe that a crime had been committed, they should have waited until they arrived at the police station and obtained a search warrant before searching the car.

In the *Lewis* case a majority of the court felt compelled

by the language of the United States Supreme Court in *Preston* v. *United States,* 376 U.S. 364, 11 L. Ed. 2d 777, to invalidate a search of an automobile without a warrant after a defendant has been taken into custody and the car impounded.

Subsequent to *Lewis,* however, the United States Supreme Court clarified the *Preston* rule in *Cooper* v. *California,* 386 U.S. 58, 17 L. Ed. 2d 730. In *Cooper* the court upheld the search of the glove compartment of an automobile which had been impounded by the police despite the fact that the search occurred one week after the defendant had been arrested for a narcotics violation. The search was upheld, according to the court, because it "was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained." While the facts in *Cooper* are distinguishable from those in *Lewis* and in the present case, we believe that decision is a clear indication that the mere fact that the defendant is in custody or his automobile impounded does not in itself make a search unreasonable. We have reached the same conclusion in *People* v. *Jones, post,* p. 427, decided this term.

We therefore feel free to consider the reasonableness of this search even though it occurred after defendant was arrested and taken into custody. As stated in *Cooper* v. *California,* 386 U.S. 58, 17 L. Ed. 2d 730, 733-734: "It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' *United States* v. *Rabinowitz,* 339 U.S. 56, 66, 94 L. Ed. 653, 660, 70 S. Ct. 430." Accordingly we have examined all the facts concerning the arrest and the search in an effort to determine the reasonableness of the search. *People* v. *Watkins,* 19 Ill.2d 11.

As we have noted earlier in this opinion, the defendant admits in his brief that the arresting officers were justified

in suspecting that they were not dealing with a mere traffic violator. We agree. An examination of the record indicates that the arresting officers had valid reason to suspect, at the very least, that the automobile driven by the defendant had been stolen. It is the duty of police officers when confronted with circumstances giving an appearance of criminal activity to investigate in an effort to determine whether such criminal activity, in fact, exists. This court has sustained such searches, even after the defendant has been picked up as a mere traffic law violator, where the circumstances reasonably indicate that a more serious crime has been committed. (*People* v. *Thomas,* 31 Ill.2d 212; *People* v. *Faginkrantz,* 21 Ill.2d 75.) Faced with the situation as it existed at the time of the arrest, we find that the search of the trunk by the police officers, in an attempt either to ascertain the ownership of the automobile or to determine whether a crime had, in fact, been committed was not unreasonable. Consequently, the trial court did not err in denying Brown's motion to suppress. See *People* v. *Jones, post,* p. 427.

In view of the conclusion concerning Brown, it is unnecessary to consider the question of whether or not defendant Sulauka should be allowed to join Brown's motion to suppress. Accordingly, the decisions of the trial court and the appellate court as to both defendants are affirmed.

*Judgments affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.