(No. 47159.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JOHN PALMER, Appellee.

*Opinion filed January 26, 1976.*

CREBS, J., took no part.
GOLDENHERSH, J., dissenting.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Patrick T. Driscoll, Jr., Laurence J. Bolon, Jr., and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Marilyn Dershem Israel, and John Thomas Moran, Assistant Public Defenders, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

After a bench trial before a judge in the circuit court of Cook County, the defendant was found guilty of unlawful use of weapons and of failure to possess a firearm owner's identification card. (Ill. Rev. Stat. 1971, ch. 38, pars. 24—1(a)(4), 83—2(a).) The appellate court reversed the convictions (22 Ill. App. 3d 866), and we allowed leave to appeal. The disputed issue in the case concerns the legality of the search of the defendant, John Palmer, which disclosed a loaded .25-caliber revolver in the defendant's right rear pants pocket.

The arresting officer testified that at approximately 11:10 a.m. on October 12, 1971, he saw the defendant driving a car without any license plates. The defendant parked the car and helped a woman passenger out of it. When the defendant started to drive away, the officer stopped him, asked him how long it had been since he purchased the car, and also asked him to produce his driver's license. The defendant did not have a driver's license, but looked through his wallet for a "yellow slip." The officer then searched him and discovered the weapon described above in the defendant's pants pocket. The trial judge denied the motion to suppress on the ground that because the car which the defendant was driving had no license plates and the defendant had no driver's license, the officer was justified in believing that he was dealing with something more than a routine traffic violation.

At the trial, which took place immediately after the hearing on the motion to suppress, the officer testified that the defendant had been cooperative and had given him no undue cause for alarm or any reason to fear for his

safety. The gun was found in a tobacco pouch, with the butt of the pistol protruding from the pouch. The pouch was discovered in a "pat down" search by the officer. At the hearing in mitigation and aggravation, the defendant said that he had applied for license plates but they had not been issued because he had forgotten to put his social security number on the application. It is undisputed that the defendant had no firearm owner's identification card. Ill. Rev. Stat. 1971, ch. 38, par. 83—2(a).

In his attack upon the validity of the search, the defendant characterizes his conduct as "a routine traffic violation," and argues that the search was unreasonable because the officer did not "point to specific articulable facts from which he could reasonably infer the individual was armed and dangerous." But the decisions of this court have consistently held that the absence of license plates suggests a serious violation of the law which justifies a search. (*People v. Brown* (1967), 38 Ill.2d 353; *People v. Watkins* (1960), 19 Ill.2d 11; *People v. Berry* (1959), 17 Ill.2d 247.) In *People v. Brown,* the court stated:

"It has long been established that the constitutional safeguards contained in section 6 of article II of the Illinois constitution, and the fourth amendment to the United States constitution, do not prohibit all searches made without a warrant, but only those which are unreasonable, and that the determinations of the reasonableness of any given search must depend upon the facts in the particular situation. (*United States v. Rabinowitz,* 339 U.S. 56, 94 L. Ed. 653; *People v. Watkins,* 19 Ill.2d 11.) In *Watkins* we held that a search incident to an arrest is authorized when it is reasonably necessary to protect the arresting officers from attack, to prevent the prisoner from escaping, or to discover the fruits of a crime. We went on to state that the total absence of license plates on a car could reasonably

suggest a serious violation of the law which would justify a search.

In *People v. Thomas,* 31 Ill.2d 212, we held that if circumstances reasonably indicate that the police may be dealing, not with an ordinary traffic violator, but with a criminal, then a search of the driver and his vehicle is authorized in order to insure the safety of the police officers and to prevent an escape." 38 Ill.2d 353, 355.

On the authority of these decisions, the motion to suppress was properly denied.

The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. I agree with the well-reasoned opinion of the appellate court and would affirm the judgment. The majority concedes that the record shows that prior to and at the time of the officer's search of defendant's person he "had been cooperative and had given him no undue cause for alarm or any reason to fear for his safety." (62 Ill.2d at 262-63.) The record also shows that the officer decided to conduct the "pat-down" search while defendant was still looking through his wallet for the "yellow slip" issued as a temporary driver's license, and at that time could not yet have known that he had no temporary driver's license. The majority, relying on *People v. Brown,* 38 Ill.2d 353, *People v. Watkins,* 19 Ill.2d 11, and *People v. Berry,* 17 Ill.2d 247, concluded that "the decisions of this court have consistently held that the absence of license plates suggests a serious violation of the law which justifies a search." (62 Ill.2d at 263.) An examination of

those opinions shows that they fail to support the majority's summary rejection of defendant's contention that the search was unreasonable.

In *Berry,* in addition to the absence of license plates on defendant's vehicle, the evidence showed that the arresting officers had seen defendant's companion hand him a package of "policy" tickets and also that one of the arresting officers, who had been assigned to the gambling detail for a number of years, had known defendant for some period of time.

In *Watkins,* which in part overruled both *Berry* and *People v. Clark,* 9 Ill.2d 400, upon which *Berry* relied, the court drew a distinction between various types of misdemeanors and held that "the total absence of license plates *** could reasonably suggest a serious violation of the law ***." (19 Ill.2d 11, 19.) The opinion fails to state why this is so. Here too, however, as in *Clark,* the arresting officers were members of the gambling detail who knew the defendant.

In *Brown,* in addition to the absence of license plates, it was conceded "that the arresting officers had valid reason to suspect, at the very least, that the automobile driven by the defendant had been stolen." (38 Ill.2d 353, 358.) Thus it is clear that in none of the three cases upon which the majority relies were the arrest and subsequent search approved solely on the basis of an absence of license plates.

Insofar as furnishing reasonable ground for a search of the defendant's person, notwithstanding the statement contained in *Watkins,* an examination of the authorities fails to support drawing a distinction between a misdemeanor committed by reason of failure to display license plates and other traffic violations; indeed the contrary is clearly demonstrated. The only offense, if any, of which the officer here was aware was the operation of a vehicle without evidence of registration (Ill. Rev. Stat. 1969, ch. 95½, par. 3—701). Section 6—306 of the Motor Vehicle

Code (Ill. Rev. Stat. 1971, ch. 95½, par. 6—306) in pertinent part provided:

> "(a) Any person arrested and charged with violation of Section 3—701 *** shall have the option of depositing his drivers license issued under this Act with the officer demanding bail in lieu of any other security for his appearance in court in answer to any such charge."

Supreme Court Rule 526 provided:

> "(a) *Bail in Minor Traffic Offenses:* Except as provided in paragraphs (b), (c) and (e) of this rule a person arrested for a traffic offense and personally served by the arresting officer with a traffic ticket shall post bail in the amount of $25 in one of the following ways: (1) By depositing, in lieu of such amount, his current Illinois driver's license; or (2) By depositing, in lieu of such amount, an approved bond certificate; or (3) By posting $25 cash bail." Ill. Rev. Stat. 1973, ch. 110A, par. 526.

The situation shown by this record is well described by Mr. Justice Leighton, who, in his special concurrence, stated:

> "The traffic violation which Officer Vuko thought defendant was committing on October 12, 1971, was punishable by a fine of not more than $100 or imprisonment for not more than 10 days. (Ill. Rev. [Stat.] 1969, ch. 95½, par. 3—833.) It was an offense for which the law did not require custodial arrest; and in this community, by a practice of long standing, Officer Vuko would have given defendant a traffic ticket, the equivalent of a civil summons.
>
> What is more important, however, is that according to Officer Vuko, he had no intention of making an arrest; nothing had been done by defendant to cause Vuko alarm or make him fear for his safety." 22 Ill. App. 3d 866, 872.

Because of its reliance on *Brown, Watkins* and *Berry,* the majority found it unnecessary to discuss the authorities upon which the People principally relied, *United*

*States v. Robinson,* 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, and *Gustafson v. Florida,* 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488. On this record, which shows conclusively that the search was made, not in connection with a custodial arrest, but during "a routine traffic stop," not even those cases would sustain its validity.

In *Robinson,* the Supreme Court recognized the distinction between the custodial arrest there involved and the "routine traffic stop" where the officer "would simply issue a notice of violation and allow the offender to proceed." (See 414 U.S. 218, 236 n.6, 38 L. Ed. 2d 427, 441 n.6, 94 S. Ct. 467, 477 n.6.) The court said "Since in this case the officer did make a full-custody arrest of the violator, we do not reach the question discussed by the Court of Appeals [a routine traffic stop]." Mr. Justice Stewart, in his concurring statement in *Gustafson,* said: "It seems to me that a persuasive claim might have been made in this case that the custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments. But no such claim has been made. Instead, the petitioner has fully conceded the constitutional validity of his custodial arrest."

In my opinion, the appellate court correctly concluded that in the circumstances shown by this record, where at the time of the search a custodial arrest had been neither made nor contemplated, the police officer was in precisely the same position, so far as exposure to danger was concerned, as were the inquiring officers in *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York,* 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889. The reasonableness of the search in this case must be judged by the standards of *Terry* and *Sibron,* and by those standards, under the circumstances which existed at the time of the search, it was unreasonable.