THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNNY McGEE, Defendant-Appellant.

First District (3rd Division)    No. 62792

Opinion filed December 30, 1976.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant, Johnny McGee, was indicted for the offense of unlawful use of weapons in violation of section 24—1(a)(10) of the Criminal Code. (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(10).) Prior to trial, defendant moved to quash his arrest and suppress evidence and after a hearing the trial court ordered that defendant's motion be denied. After a bench trial, the trial court found defendant guilty as charged and, pursuant to the enhanced penalty provisions of section 24—1(b) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(b)), sentenced defendant to 12 to 14 months in the House of Corrections. Defendant now appeals.

On appeal defendant contends that the arrest of a properly licensed motorist for a municipal traffic offense. of negligent driving does not

warrant the search of his person and that as a result the trial court erred in denying his motion to suppress.

We affirm.

Two witnesses, Officer Joseph Kosala and the defendant, testified at the hearing on defendant's motion to quash the arrest and suppress evidence. Officer Kosala testified that on March 23, 1975, he and his partner received a call informing them of a traffic accident at Blackhawk and Mohawk Streets in Chicago. Upon arriving at the scene of the accident, Officer Kosala and his partner noticed that three parked vehicles and a vehicle at the corner were involved in the accident. The officers then encountered Mr. Jenkins, one of the motorists involved in the accident. Standing beside his damaged vehicle, Mr. Jenkins pointed to the defendant and shouted, "There he goes." Mr. Jenkins explained to Officer Kosala that he lived four or five houses from the defendant and knew him from the neighborhood. As the officers exited from their squad car, the defendant was approximately 20 yards away and walking into an alley. At this point, two other police officers, Officers Foley and Blas, stopped the defendant and brought him over to Officer Kosala. Officer Kosala asked the defendant for his driver's license and defendant produced a valid driver's license. When defendant stated that he was not driving the car, Officer Kosala searched the defendant looking for the keys to the car and felt an object which could have been a gun. Officer Kosala removed defendant's coat and discovered a gun hanging from a rope tied around defendant's neck. The officers then arrested the defendant and took him to the station where they inventoried the gun and charged defendant with negligent driving and unlawful use of weapons.

Defendant testified at the hearing on the motion to quash the arrest and suppress evidence that he was stopped by Officer Kosala and asked if he was driving "that car." Defendant stated that he was not and was then asked if he had any weapon. After defendant stated he had no gun, he was searched. No gun was found and defendant was told he could leave. When defendant arrived at the corner, two detectives stopped him. Defendant said he was going to a tavern to buy cigarettes. At that point the detectives searched him, found nothing, but told him to get into the squad car. The two detectives drove defendant over to Officer Kosala. A detective then pulled out a gun and stated, "Look what we got off him." Defendant denied knowing Mr. Jenkins and stated the first time he saw the weapon was when the detective produced it. On cross-examination, defendant admitted there was a rope tied to the gun but denied seeing where the policeman got the gun.

After hearing the above testimony of Officer Kosala and defendant, the trial court denied the motion to quash the arrest and suppress evidence.

At trial, it was stipulated that defendant was convicted of burglary on

January 8, 1974, sentenced to 1 year to 1 year and a day and paroled on June 7, 1974. There was a further stipulation entered that the testimony adduced at the motion to suppress would be the same as at trial. At trial, Officer Kosala identified defendant as the person from whom he recovered the gun and described the weapon as a .32-caliber, Smith and Wesson revolver containing six live rounds. After a bench trial, defendant was found guilty of unlawful use of weapons and sentenced to 1 year to 14 months in the House of Corrections.

Defendant argues that the arrest of a properly licensed motorist for a municipal traffic offense of negligent driving does not warrant the search of his person. Defendant further argues that the record gives no indication that the police officers had any reason to believe that they were dealing with more than the ordinary traffic offender. We disagree.

In *People v. Palmer* (1976), 62 Ill. 2d 261, 342 N.E.2d 353, a police officer stopped the defendant for driving his car without license plates displayed. The police officer then searched the defendant and discovered a loaded .25-caliber revolver on his person. In affirming the trial court's decision denying defendant's motion to suppress, our supreme court in *Palmer* quoted as follows from *People v. Brown* (1967), 38 Ill. 2d 353, 355, 231 N.E.2d 577, 578:

> "It has long been established that the constitutional safeguards contained in section 6 of article II of the Illinois constitution, and the fourth amendment to the United States constitution, do not prohibit all searches made without a warrant, but only those which are unreasonable, and that the determinations of the reasonableness of any given search must depend upon the facts in the particular situation. (*United States v. Rabinowitz*, 339 U.S. 56, 94 L. Ed. 653; *People v. Watkins*, 19 Ill. 2d 11.)

In finding the search in *Palmer* reasonable, the court held that the absence of license plates suggests a serious violation of the law which justifies a search of the defendant driver's person. For example, license plates may be removed from a vehicle to conceal its identity or that of its driver from observers. *People v. Dotson* (1976), 37 Ill. App. 3d 176, 345 N.E.2d 721.

The record in the instant case indicates that the accident involved one automobile striking three other parked vehicles and that when the police officers arrived at the scene they encountered the motorist of one of the parked vehicles involved in the accident, saw him point to the defendant, and heard him yell, "There he goes." At this time the defendant was walking into an alley and away from the scene of the accident. When the police officers asked the defendant if he was driving the vehicle which caused the accident, the defendant replied in the negative. Looking for the keys to that automobile, the police officers then searched the defendant and found a loaded revolver on his person.

It is our conclusion that when considered in its entirety, the conduct of the defendant in the instant case, like that of the defendant in *Palmer*, indicated that defendant was more than the ordinary traffic offender and suggested a serious violation of the law. Furthermore, the police officers in the instant case had reason to believe that the defendant was the driver of the vehicle which caused the accident. When the defendant denied driving the vehicle, the officers searched him looking for the keys to the automobile, evidence of a crime. Considering defendant's conduct in its entirety and the fact that the search was conducted to discover the keys to the automobile, it is our decision that the search was reasonable and that the trial court did not err in denying the motion to suppress.

Judgment affirmed.

McNAMARA, P. J., and MEJDA, J., concur.