THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM N. REDMOND, a/k/a William Noah Redmond, a/k/a William Randall, Defendant-Appellant.

First District (2nd Division)   No. 78-564

Opinion filed May 29, 1979.

162

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Nicholas P. Iavarone, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant William Redmond, appearing pro se, was found guilty by a jury in the circuit court of Cook County of unlawful possession of more than 30 grams of cannabis in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1975, ch. 56½, par. 704(d)) and unlawful possession of a controlled substance known as phencyclidine in violation of section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b)). He was sentenced to imprisonment for two to six years.

On appeal defendant contends that: (1) his motion to quash the arrest and suppress evidence was improperly denied; (2) no effective waiver of counsel was made; (3) two defense instructions were improperly refused; and (4) improper comments by the prosecution in its closing argument denied him a fair trial.

The testimony at the hearing on defendant's motion to quash arrest and suppress evidence and at trial revealed that on June 30, 1976, at approximately 1:30 p.m. Officers Leonard Kukulka and Terrence O'Connor were proceeding in a squad car westbound on 45th Street in Chicago. Officer Kukulka noticed a 1969 Oldsmobile traveling several car lengths in front of him without a rear license plate. After curbing the vehicle, Kukulka met the driver, whom he identified as the defendant, in front of the squad car which was parked behind the car driven by defendant. Kukulka asked defendant for his driver's license. Kukulka told the defendant he was stopped for failure to have a rear license plate.

Defendant insisted he had one and the two proceeded to the rear of defendant's car. Defendant lifted up a license plate rack attached to the back of the car and showed Kukulka the plate. Kukulka described the rack as an indentation in the bumper which folded down in order to allow gas to be put into the car. Kukulka testified that the spring mechanism of the rack was broken causing the rack to be in a downward vertical position with the license plate facing the car so that no license plate was visible.

During this time, Officer O'Connor was checking the front of the car and told Kukulka that the car did not have a current city vehicle sticker. Kukulka stated that it was at this point that he told defendant that a temporary driver's license was not acceptable for bond purposes and that defendant would have to go to the police station to post a cash bond. He placed defendant under arrest and told him he would have to conduct a protective pat-down search. Kukulka testified that as he attempted to do so, defendant swung at him, grazing the left side of his head. A scuffle ensued and Kukulka, aided by his partner, subdued the defendant. Kukulka then searched the defendant recovering a tin foil packet from defendant's shirt pocket containing a tan powder which Kukulka said he believed to be a controlled substance.

Kukulka stated that a purse defendant had slung over his shoulder when he first exited his car was knocked to the ground during the scuffle. His partner picked up the purse and in examining its contents found three manila envelopes which contained crushed green plant. The officers then drove defendant to the police station where a more thorough search of his person was made uncovering eight hand-rolled cigarettes from his sock. This evidence was inventoried and sent to the crime lab.

Officer O'Connor stated that he observed a 1975 city vehicle sticker and a license applied for sticker on defendant's car windshield. He called back to Kukulka that there was no current (1976) vehicle sticker on the car. When he looked up after checking for a front license plate, he observed defendant strike his partner. He assisted his partner in restraining defendant and handcuffed him. He testified that it was after defendant was searched and placed in the squad car that he recovered defendant's purse from the street and examined its contents.

Elizabeth Olson-Koza and William Tyrrell, chemists employed by the Chicago Police Department, testified on behalf of the State. Olson-Koza testified she tested and weighed the green plant contained in the three manila envelopes and the eight hand-rolled cigarettes and determined the green plant to be cannabis sativa with a total weight of 37.5 grams. Tyrrell testified that he examined the tin foil packet of tan powder and determined its weight to be .98 grams. After testing the powder, he found it contained phencyclidine.

After his motion for directed verdict was denied, defendant testified

that at the time of his arrest he was employed as a field representative for Standard Educators assisting children having school and juvenile problems. He stated that on June 30, 1976, he was driving a 1969 Oldsmobile owned by a friend, Leon Dale. He had known Dale for two or three years, saw him three or four times a month, but did not know his employment. Defendant testified that he picked up the car from Dale two days before the incident.

Defendant stated that when he was stopped, the license plate rack was in an upright position and the rear license plate was visible. He testified that the license plate rack could never hang straight down as Officer Kukulka testified because the bumper of the car would prevent it and it could be pulled down only to a horizontal position. Defendant also testified that displayed on the front windshield of the car was a current city vehicle sticker and a license applied for sticker. Defendant attempted to show that there was a current vehicle sticker on the car by introducing into evidence a receipt defendant said he received from the Chicago Police Pound the day the car was released to him which indicated the date of the vehicle sticker on the car. An objection was sustained since the court found it appeared as if the date on the document had been altered. Defendant was allowed to introduce into evidence a copy of the title to the car which he said he received from Dale's wife and was necessary to obtain the release of the car from the pound.

Defendant testified that after he showed Kukulka his temporary driver's license, Kukulka said that was not enough and conducted a pat-down search. According to defendant, he did not become belligerent and the pat-down search revealed nothing. After this search, defendant said O'Connor told Kukulka that there was no current vehicle sticker and Kukulka grabbed defendant's hand and told him he was under arrest. Defendant stated that he snatched his hand away and Kukulka grabbed him. Defendant denied striking Kukulka and denied having any knowledge that marijuana was in his purse or that a tin-foil packet was in his shirt pocket. He stated that he had looked in his purse three hours earlier and it did not contain three manila envelopes. He testified that he did not see the officers take anything out of his purse and the first he knew of the tin foil packet was when Kukulka told him that was what he had pulled out of his shirt pocket. Defendant also denied having eight hand rolled cigarettes in his possession and said he did not see the officers remove them from his sock.

Leon Dale, called as a rebuttal witness for the State, testified that he had owned a 1969 Oldsmobile but sold it in 1974 to an individual known to him as Shorty. Dale identified the copy of the title to the car as that which he had signed over to Shorty and identified his signature on the document.

Dale stated that he had never seen the defendant prior to being in court. Dale's physical appearance did not match that testified to by the defendant.

Defendant then testified that the Leon Dale he received the car from was not the same Leon Dale who had just testified. The defendant stated that he had known the person from whom he received the car and he had known him by no other name than Leon Dale.

The jury found defendant guilty on both charges.

## I.

At the outset it is necessary to consider the State's contention that defendant waived the issues he raises on review by his failure to file a written motion for new trial in accordance with section 116—1 of the Code of Criminal Procedure of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 116—1).

After verdict and before sentencing, the public defender on behalf of the defendant made an oral motion for new trial. He argued that the trial court erred in refusing certain jury instructions tendered by the defense, but stated that by pointing out only one error he did not intend to waive other errors properly preserved in the record. No objection was made by the State. The trial court denied the oral motion.

■■■ Section 116—1 provides that a written motion for a new trial shall be filed by defendant within 30 days after the entry of a finding or the return of a verdict and shall specify the grounds therefor. This section addresses only post-trial procedure in the trial court, it contains no reference to the waiver rule or to appellate procedure, and it prescribes no consequences for a failure to comply with its terms. (*People v. Sweeny* (5th Dist. 1978), 57 Ill. App. 3d 879, 885, 373 N.E.2d 663.) That a post-trial motion for new trial be in writing is not made mandatory by this section. (*People v. Biers* (3d Dist. 1976), 41 Ill. App. 3d 576, 578, 353 N.E.2d 389.) Instead our supreme court has held that a general oral motion for a new trial, if not objected to by the State, will preserve for appeal all errors which appear properly preserved on the record. (*People v. Whitehead* (1966), 35 Ill. 2d 501, 503-04, 221 N.E.2d 256; *People v. Flynn* (1956), 8 Ill. 2d 116, 118-20, 133 N.E.2d 257; *People v. Prohaska* (1956), 8 Ill. 2d 579, 583, 134 N.E.2d 799.) There is no evidence in the record that the State objected to the absence of a written motion or requested specificity. Therefore, defendant is not precluded from raising the present issues on review. See *People v. Houck* (1st Dist. 1977), 50 Ill. App. 3d 274, 281, 365 N.E.2d 576.

## II.

The trial court denied defendant's motion to quash the arrest and suppress evidence on the basis that the officers could have reasonably believed they were dealing with something other than an ordinary traffic

violation. The court found the testimony concerning whether there was a current vehicle sticker irrelevant since defendant was stopped for failure to have a rear license plate.

### A.

Defendant argues that his custodial arrest for a minor traffic offense was unreasonable and he was justified in resisting the search made incident to the arrest. Defendant was stopped for the failure to display a rear license plate. According to Officer Kukulka's testimony there was a rear license plate, but it was not in a proper position causing it to be unreadable.

Failure to properly display license plates is a violation of section 27—354(a)(d) of the Municipal Code of the City of Chicago as well as the Illinois vehicle title and registration law (Ill. Rev. Stat. 1975, ch. 95½, par. 3—413). Section 3—413(a) requires a license plate to be affixed to both the front and rear of a vehicle. Section 3—413(b) requires that license plates be clearly readable and in a clearly visible position.

Although defendant had a valid temporary driver's license, Officer Kukulka told him that was not enough and that he would have to take him to the police station to post a cash bond. This procedure is in accordance with Supreme Court Rule 526 (Ill. Rev. Stat. 1975, ch. 110A, par. 526) which provides "* * * a person arrested for a traffic offense and personally served by the arresting officer with a traffic ticket shall post bail in the amount of $25 in one of the following ways: (1) By depositing, in lieu of such amount, his current Illinois driver's license; or (2) By depositing, in lieu of such amount, an approved bond certificate; or (3) By posting $25 cash bail." Rule 501(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 501(c)) provides that "temporary licenses * * * shall not be accepted in lieu of or in addition to bail amounts established in Rule 526." Rule 553(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 553(a)) lists the different facilities at which bail may be posted, one of which is a police station.

In both *United States v. Robinson* (1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440, 94 S. Ct. 467, and *Gustafson v. Florida* (1973), 414 U.S. 260, 264, 38 L. Ed. 2d 456, 94 S. Ct. 488, the United States Supreme Court held that once a person is placed under a full custodial arrest, a full search of the person is not only an exception to the warrant requirement of the fourth amendment, but is also a reasonable search under that amendment. The reason for the search, the court explained, was founded on the need to disarm the suspect for the protection of the officer transporting him to the police station as well as the need to preserve evidence on his person for later use at trial.

Defendant argues that a custodial arrest was not justified here where defendant showed the officer a valid temporary driver's license, had done nothing up to that point to give the officer reason to believe a search was

necessary, and the police could have merely issued defendant a traffic ticket or allowed him to follow them in his car to the police station. Similar contentions were considered in *Gustafson*, at page 265, but the court decided that such alternatives were not determinative of the constitutional issue. The court stated, "It is sufficient that the officer had probable cause to arrest the petitioner and that he lawfully effectuated the arrest and placed the petitioner in custody." 414 U.S. at 265.

The Illinois Supreme Court in *People v. Palmer* (1976), 62 Ill. 2d 261, 342 N.E.2d 353, *cert. denied* (1976), 429 U.S. 871, 50 L. Ed. 2d 151, 97 S. Ct. 185, extended the holdings in *Robinson* and *Gustafson* and upheld the trial court's refusal to suppress evidence obtained as a result of a pre-arrest pat-down search of a motorist stopped for driving without license plates. The court found a search of a person stopped for a traffic violation permissible where the officer has reason to believe he is dealing not with the "ordinary traffic violator" but with a "criminal." Although the arresting officer testified defendant gave him no cause for alarm, the court found the search legal because "* * * the absence of license plates suggests a serious violation of the law which justifies a search." 62 Ill. 2d 261, 263.

Defendant relies on *People v. Reed* (1967), 37 Ill. 2d 91, 227 N.E.2d 69, for the proposition that not every custodial arrest warrants a search. In *Reed*, defendant was stopped for driving without a rear license plate. Unlike the present situation, Reed produced a valid driver's license and registration card showing that he had purchased both front and rear plates. The officers testified that Reed behaved in a nervous fashion and kept looking toward his car. The officer asked if he had any weapons and when he replied negatively, they searched him but found nothing. Still suspicious, the officers decided to take defendant to the police station in order to check him out. Before taking defendant in, however, the police searched his car and found a bag of white powder later determined to contain heroin. In finding the search and seizure illegal, the court found that although Reed was stopped for driving without a rear license plate, the stop was in broad daylight, Reed had valid identification for himself and his automobile, he did not threaten the arresting officer, use loud language or attempt to escape, and the arresting officer admitted that the sole reason for the search was Reed's nervous behavior. The circumstances in the present case are readily distinguishable from those in *Reed* and therefore defendant's reliance is misplaced.

Not only was the instant search of defendant's person valid under the holdings of *Robinson, Gustafson,* and *Palmer*, but it was also valid as incident to a lawful arrest. *Chimel v. California* (1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 89 S. Ct. 2034.

In *Chimel*, the United States Supreme Court defined the scope of a permissible warrantless search incident to a lawful arrest to include a

search of the defendant's person plus the area within his immediate control from which he might obtain possession of a weapon or destructible evidence. It was not until after the defendant struck Officer Kukulka and defendant was subdued and handcuffed that the actual search of his person was conducted. A tin foil packet containing a controlled substance was recovered from his shirt pocket. Eight hand-rolled cigarettes containing marijuana were found in defendant's sock when a more thorough search was made at the station. Searches and seizures that could be made on the spot at the time of the arrest may legally be conducted later when the accused arrives at a place of detention. *United States v. Edwards* (1974), 415 U.S. 800, 803, 39 L. Ed. 2d 771, 94 S. Ct. 1234; *People v. Campbell* (1977), 67 Ill. 2d 308, 319, 367 N.E.2d 949, *cert. denied* (1978), 435 U.S. 942, 55 L. Ed. 2d 538, 98 S. Ct. 1521.

■■ Here the arresting officers had a defendant with a rear license not displayed and he was unable to meet the Supreme Court Rule for posting bail because he had a temporary license. A scuffle with one officer took place. As it was necessary that this defendant be taken to the police station to post bail, a search was justified for the protection of the officer. The discovery of the contraband which followed was the result of a legal search. As our supreme court said in *Campbell*, "The ultimate test, of course, is the reasonableness of the search which was made, not whether the officers could have secured a warrant, * * *." 67 Ill. 2d 308, 319.

## B.

The more difficult question concerns the legality of the warrantless search of defendant's purse. Defendant argues that the search of his purse was conducted after he had been restrained and seated in the back seat of the squad car and violated the fourth amendment under standards articulated by the Supreme Court in *Chimel v. California* and *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476. The State did not address this issue in its brief.

In *Chadwick*, Federal narcotics agents arrested defendants outside a Boston train station as defendants were loading a locked footlocker, which the agents had probable cause to believe contained marijuana, into an automobile. The agents arrested defendants, searched them, and took them and the footlocker to the Federal building. There the agents opened the footlocker without a search warrant more than an hour after the arrests and found marijuana.

Finding the search of the footlocker went beyond the arrestees' person and area from which they might have obtained either a weapon or something that could have been used as evidence against defendants, the court stated:

"Once law enforcement officers have reduced luggage or other

personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (433 U.S. 1, 15, 53 L. Ed. 2d 538, 551, 97 S. Ct. 2476, 2485.)

The court recognized that under the facts of the case, it was reasonably predictable that a search warrant would have been issued. Nonetheless, the court concluded, "when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority." 433 U.S. 1, 15, 53 L. Ed. 2d 538, 551, 97 S. Ct. 2476, 2485.

In *United States v. Berry* (7th Cir. 1977), 560 F.2d 861, defendants, suspected bank robbers, were arrested in a parking lot, searched, handcuffed, and taken away. A briefcase, which had been taken from one of the defendants at the time of his arrest and placed on the ground, was searched by one of the several agents who remained in the parking lot. Relying on *Chadwick*, the court found that the warrantless search of the briefcase conducted after the arrest while the case was in police custody, could not be justified as a search incident to arrest because there no longer was any danger that the arrestee might gain access to the case to seize a weapon or destroy evidence; nor could the search be justified as a search of the person because the briefcase could not be characterized as an item immediately associated with defendant's person. In deciding the latter point, the court found that unlike a purse which might be characterized as immediately associated with the person of the arrestee because it is carried with the person at all times, the briefcase was more like luggage and better characterized as a possession within the arrestee's immediate control. Because *Chadwick* was decided subsequent to the presentation of the Government's case, the court remanded the *Berry* case to allow the Government to present additional evidence of the surrounding circumstances in order to ascertain whether the search might have been justified under another exception to the warrant requirement.

However, upon hearing *United States v. Berry* (7th Cir. 1978), 571 F.2d 2, *cert. denied* (1978), ___ U.S. ___, 58 L. Ed. 2d 138, 99 S. Ct. 129), the court declined to apply *Chadwick* retroactively and upheld the search of the briefcase. The court, citing *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, and *United States v. Edwards* (1974), 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234, found that prior to *Chadwick*, law enforcement officials could seize a briefcase or package in the possession of a person at the time of arrest, and subseqently search the property without a warrant even after the arrestee had been taken into custody.

Six months later in *United States v. Mancillas* (7th Cir. 1978), 580 F.2d 1301, *cert. denied* (1978), ___ U.S. ___, 58 L. Ed. 2d 351, 99 S. Ct. 361, the court upheld a search of a tape-wrapped package containing heroin, after arrests had been effected where the package was seized from a chair next to the door in a single motel room, where defendant was in close proximity to the door and three other men were present in the room with at least reasonably direct access to the package. The court stated that under *Chadwick*, a warrantless search incident to an arrest to protect evidence does not necessarily justify a subsequent warrantless search of the contents of the object seized once it is safely within the control of the authorities. But since this was a pre-*Chadwick* search, the court relying on the *Berry* decision, declined to apply *Chadwick* retroactively.

One month after the *Mancillas* decision, the 8th Circuit decided the case of *United States v. Schleis* (8th Cir. 1978), 582 F.2d 1166, for the second time. In *Schleis*, a Federal deputy marshal noticed that defendant appeared to be under the influence of something other than liquor. While patting defendant down for weapons, his wallet was removed and thrown on the hood of a car where it opened and revealed a small plastic bag of marijuana. A police officer who arrived at the scene recognized defendant as a drug dealer and placed him under arrest. He was taken to the police station where a search of his clothing revealed a plastic medicine bottle containing heroin. A warrantless search of defendant's briefcase was made and cocaine was recovered.

In its first opinion, the court found the warrantless searches of defendant's person and briefcase were lawful. (*United States v. Schleis* (8th Cir. 1976), 543 F.2d 59.) The United States Supreme Court vacated this opinion and remanded the case for further consideration in light of *Chadwick*. *Schleis v. United States* (1977), 433 U.S. 905, 53 L. Ed. 2d 1089, 97 S. Ct. 2968.

In its second opinion, the court found the search of defendant's briefcase illegal in that the contents of a briefcase were entitled to the same protection as the contents of a footlocker; that searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest; that although the *Chimel* exception applies to items within the arrestee's immediate control, under *Chadwick* that exception evaporates once the officers seize the item and reduce it to their exclusive control; and that the briefcase came under the exclusive control of the police at the time defendant was handcuffed and taken into custody. The court stated that to decide otherwise would enable police and Federal agents to circumvent the *Chadwick* holding by encouraging them to conduct a search of luggage at the time and location of the seizure in conjunction with a lawful arrest. The court also held that although the case involved a pre-*Chadwick* search, it did not present a

question of retroactivity since *Chadwick* did not announce a new constitutional doctrine or broaden any existing exclusionary rule. (582 F.2d 1166, 1174.) The court noted that if the United States Supreme Court did not intend *Chadwick* to be applied retroactively, it would not have remanded the case. 582 F.2d 1166, 1173 n. 6.

The Illinois Supreme Court has been confronted with the question of the legality of a warrantless search in three post-*Chadwick* cases. In *People v. Blitz* (1977), 68 Ill. 2d 287, 369 N.E.2d 1238, *cert. denied* (1978), 435 U.S. 974, 56 L. Ed. 2d 68, 98 S. Ct. 1622, the Supreme Court with three judges dissenting upheld the search of defendant's car trunk on the basis of probable cause. In *Blitz*, a deputy sheriff received a tip that drugs were being sold in a certain house. The sheriff watched the house and observed a succession of four or five persons drive up to the house, enter, and depart after about 5 or 10 minutes. He then observed defendant and his brother enter the house and return carrying a brown paper bag which they placed in the trunk of the car. The sheriff followed the defendant and noticed that his license plate light was out and his view of the plate was obstructed by a trailer hitch. The sheriff testified that when he stopped the defendant, he jumped out of the car and acted in a nervous manner. The sheriff told defendant he was stopped for a license violation and asked for and received a valid driver's license from the defendant. After other officers arrived at the scene, defendant was searched and placed under arrest for a license plate violation. The sheriff then searched defendant's trunk and found a brown paper bag containing marijuana. The court considered the totality of the circumstances and found that the sheriff had probable cause to search the defendant's trunk. The court stated that police officers have a duty to investigate when confronted with circumstances giving an appearance of criminal activity and the sheriff would have been subject to criticism had he not attempted to ascertain whether the defendant's car did in fact contain drugs.

In reaching its decision, the court quoting from *People v. Watkins* (1960), 19 Ill. 2d 11, 18-19, 166 N.E.2d 433, stated:

" 'The constitution prohibits only unreasonable searches; it permits those that are reasonable. The critical issue in each case must be whether the situation that confronted the officer justified the search. That question can not be determined by an indiscriminate application of legal concepts that were evolved to meet quite different problems. * * *

* * *

* * * Police officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.' " 68 Ill. 2d 287, 291-92.

It should be noted that *Watkins* was decided pre-*Chimel* and pre-*Chadwick*. In *Chimel*, the court stated that although the " '* * * recurring questions of the reasonableness of searches' depend upon 'the facts and circumstances—the total atmosphere of the case,' [citation]; those facts and circumstances must be viewed in the light of established Fourth Amendment principles." 395 U.S. 752, 765, 23 L. Ed. 2d 685, 695, 89 S. Ct. 2034.

In *People v. Campbell* (1977), 67 Ill. 2d 308, 367 N.E.2d 949, *cert. denied* (1978), 435 U.S. 942, 55 L. Ed. 2d 538, 98 S. Ct. 1521, the police had been informed that defendants would be arriving at the airport with suitcases suspected to contain marijuana. The police brought specially trained police dogs to the airport and the dogs were allowed to sniff all luggage unloaded from the defendants' flight in a nonpublic area before it was distributed to the passengers. Each dog alerted to the same two suitcases. When the luggage was brought out, defendants claimed eight suitcases including the two which had attracted the dogs. As the defendants were about to check their luggage, they were placed under arrest. The two suspect suitcases were opened and found to contain marijuana. The remaining luggage was taken to the police station where marijuana was found in each piece of luggage. The court found that the warrantless search of the luggage fell within the *Chimel* exception and additionally that the marijuana for which the police searched was directly involved in the offense and was "without question" a proper object of search by the police. Mr. Justice Goldenhersh, specially concurring, noted that these facts were strikingly similar to those in *Chadwick* and found that the warrantless search of the luggage both at the airport and station when defendants were in custody and had no access to it was unjustified. He also found the search unreasonable and unlawful under *Chimel*. However, he reluctantly concurred in the result because the issue had not been raised by the defendants nor argued in their briefs.

Finally, in the most recent case of *People v. Hamilton* (1979), 74 Ill.2d 457, 386 N.E.2d 53, the court considered whether heroin found in defendant's closed briefcase should have been suppressed. In *Hamilton*, defendant was injured when his van rolled down an embankment. Defendant was taken to the hospital as was a briefcase found on the front floor of his van. At the hospital, an orderly opened the briefcase and found a wrapped brown bag which upon opening he believed contained heroin. After telling a nurse of his finding, he rewrapped the bag, put it back into the briefcase and locked the case. The briefcase was then placed on a counter at the foot of defendant's hospital bed. An officer went to the hospital to complete an accident report and told defendant his briefcase would be returned to the van and his property would be inventoried. Before leaving the hospital and upon being told by the nurse he should look

in the briefcase, the officer opened it, saw a plastic envelope containing what he thought was marijuana and then examined the contents of the brown bag. When he arrived at the garage where the van had been taken, he gave the brown bag to a detective who confirmed that it contained heroin.

In reaching its decision that the fourth amendment reasonableness test of warrantless intrusions had not been met, the court stated:

"The Supreme Court in *Chadwick*, as noted above, stated that a person's expectation of privacy is substantially greater in personal luggage than in an automobile. It is apparent in this case that the defendant had an expectation of privacy in the contents of his briefcase, and to the best of his ability he sought to safeguard this privacy. The briefcase was locked and the key was kept on his person. Although he was injured in the accident, he took the briefcase with him to the hospital, and it was kept near his bed in the emergency room. The briefcase posed no threat to the police; it could have been protected from loss or theft while in police custody by placing it in a locked locker or storage room, and the officer himself could have been protected against a later claim of theft by locking the briefcase and leaving the key at the hospital along with the defendant's other personal belongings and by sealing the briefcase with tape and initialing it or by sealing it in some other suitable manner in the presence of the nurse. We can find no proper governmental purpose served by and no reasonable justification for the warrantless intrusion into the defendant's briefcase in which he obviously had a substantial expectation of privacy." 74 Ill. 2d 457, 469-70.

It is difficult to reconcile the *Blitz* and *Campbell* decisions in light of *Chadwick*. In *Chadwick*, the Government argued that the fourth amendment warrant clause protects only interests traditionally identified with the home. In all other situations, the Government contended, less significant privacy values are at stake, and the reasonableness of a government intrusion should depend solely on whether there is probable cause to believe evidence of criminal conduct is present. (433 U.S. 1, 7, 53 L. Ed. 2d 538, 545, 97 S. Ct. 2476.) The court rejected the argument that the warrant clause protects only dwellings and found that it protects people not places from unreasonable government intrusions into their legitimate expectations of privacy. The court found that probable cause alone with the existence of exigent circumstances was not enough to justify a warrantless search. The Supreme Court stated:

"Unlike searches of the person, *United States v. Robinson*, 414 U.S. 218 (1973); *United States v. Edwards*, 415 U.S. 800 (1974), searches of possessions within an arrestee's immediate control cannot be

justified by any reduced expectations of privacy caused by the arrest." (433 U.S. 1, 16 n. 10, 53 L. Ed. 2d 538, 551 n. 10, 97 S. Ct. 2476.)

Whether the item seized be a footlocker, briefcase, luggage or a purse, it would seem that the owner would possess the same expectation that its contents would remain private and free from public examination.

The Supreme Court has recently granted *certiorari* in *Arkansas v. Sanders* (1978), ___ U.S. ___, 58 L. Ed. 2d 236, 99 S.Ct. 247, wherein the question is whether a warrantless search of an unlocked suitcase based on probable cause was authorized. In *Sanders v. Arkansas* (1977), 262 Ark. 595, 559 S.W.2d 704, the court held that although police had probable cause to believe that a suitcase, located in a trunk of a taxi in which defendant was a passenger, contained marijuana, their initial uncontested seizure of the suitcase safely immobilized any evidence contained therein and made the warrantless search of the suitcase's contents unreasonable under the fourth amendment.

Also of interest is the fact that an appeal in the case of *Duncantell v. Texas* (Tex. 1978), 563 S.W.2d 252, is now pending before the United States Supreme Court. In *Duncantell*, defendant was stopped for reckless driving. Defendant became angry and abusive, attempted to flee, and then struck an officer on the head. The officer opened the car door and told defendant he was under arrest. When defendant refused to get out, the officers pulled him out. A scuffle ensued but the officers were able to wrestle defendant to the ground and handcuff him. The officers then searched his car and found a matchbox containing marijuana on the dashboard. Defendant's theory of defense was that the marijuana had been planted there. In upholding the search, the court found that the officer's observation of defendant's physical condition, in conjunction with the evidence of flight and resistance to the arrest, established probable cause to search the defendant's car for alcohol or contraband.

■■ In the instant case, the discovery of a controlled substance in the defendant's shirt pocket would give the officers probable cause to believe that defendant's purse might also contain contraband. However, the record does not contain nor did the State argue at trial or in its brief that exigent circumstances existed which would justify a warrantless search of the purse. The record only contains testimony that after defendant was handcuffed and seated in the back seat of the squad car, one of the officers picked up defendant's purse from the street where it had landed during the scuffle and searched it. Without more, the search cannot be justified under the rationale of *Chimel* or *Chadwick*. We do not find any compelling or necessary purpose justifying the police officers' warrantless intrusion into the defendant's purse at that time and location.

A finding that the marijuana found in defendant's purse should have

been suppressed would not affect defendant's convictions since the controlled substance and marijuana found on his person were recovered as a result of a lawful search. Only the amount of marijuana which defendant was found to have possessed would be affected. At trial, the chemist who examined the contraband recovered from the purse and the eight hand-rolled cigarettes testified their total weight was 37.5 grams. She testified that the weight of the substance found in the purse was 8.2155 grams. Defendant was charged with possessing more than 30 grams but less than 500 grams of marijuana, a violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1975, ch. 56½, par. 704(d)). Without the marijuana found in the purse, defendant could only be charged with a violation of section 4(c) of the Cannabis Control Act (Ill. Rev. Stat. 1975, ch. 56½, par. 704(c)) which deals with possession of more than 10 but less than 30 grams of marijuana. The sentence which may be imposed for a violation of section 4(c) differs from that which may be imposed for a violation of section 4(d). Therefore, it is necessary to remand this cause for resentencing.

## III.

Defendant next contends that he did not knowingly and intelligently waive his right to counsel because the trial court failed to comply with the requirement of Supreme Court 401(a). Ill. Rev. Stat. 1975, ch. 110A, par. 401(a).

Rule 401(a) requires that prior to permitting a waiver of counsel by a person accused of an offense punishable by imprisonment, the court must inform the defendant of and determine that he understands (1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law; and (3) his right to counsel and the right to appointment of counsel if indigent.

Defendant argues he was not adequately informed of the nature of the charge because the trial court failed to tell him the amounts he allegedly possessed or that it was unnecessary for the State to prove the entire quantity was contraband which resulted in his failure to cross-examine the chemist who examined the substance discovered to contain phencyclidine (PCP). As the record indicates, the complaint for preliminary hearing recited the amount of PCP to be .98 grams and the amount of cannabis sativa (marijuana) to be 34.7 grams. The information, received by the defendant, charged the amount of marijuana was more than 30 but less than 500 grams and that he possessed a controlled substance called phencyclidine, sometimes called PCP. The State's answer to discovery read, "34.7 grams of marijuana; .98 phencyclidine." Defendant presents no argument or proof that he did not receive these documents as they appear in the record. Defendant complains that .98

phencyclidine as written in the answer to discovery does not indicate what .98 means. When viewed in conjunction with the other documents, it is obvious that .98 referred to grams.

Defendant also argues that the trial court incorrectly advised him that his charge of possession of marijuana was a misdemeanor when in fact it was a Class 3 felony, and that although defendant was correctly advised that his possession of PCP was a Class 3 felony, he was not advised that he could also be fined $15,000.

The record indicates that the trial court informed defendant that a finding of guilty could result in the imposition of an indeterminate term of incarceration of not less than one year nor more than 10 years and an additional three-year parole period, violation of which could result in being sent back to prision. Defendant was thus made aware of the gravity of his situation.

This court has held that a failure to admonish the accused as to the charge or penalty does not require automatic reversal where there is no claim that the waiver was not voluntary or that harm or prejudice was incurred. *People v. Roberts* (3d Dist. 1975), 27 Ill. App. 3d 489, 493-94, 326 N.E.2d 116; *People v. Smith* (3d Dist. 1975), 33 Ill. App. 3d 725, 728, 338 N.E.2d 207.

■■ Although defendant was represented by a public defender on his motion to suppress, defendant informed the court that he wished to conduct his own defense at trial with the public defender remaining as "standby" counsel. The trial court explained to defendant the importance of an attorney and the disadvantages of proceeding without counsel. The defendant assured the court that he understood. Defendant's confidence in his ability to represent himself may have been based on the fact that defendant was, as the record revealed, no stranger to the criminal justice system and had been convicted of possession of marijuana on two prior occasions. There is no evidence in the record that defendant's waiver was not made voluntarily. Defendant has failed to point out, nor have we found in the record, any resulting prejudice he may have incurred. We find that defendant's waiver of counsel was effectively made.

## IV.

The defendant next contends that the trial court erred in refusing to give the following instructions tendered by the defense:

> "A material element of every crime is a voluntary act, which includes an omission to perform a duty which the law imposes on the offender and which he is physically capable of performing." (IPI Criminal No. 4.14.)

> "Possession is a voluntary act if the offender knowingly procured or received the thing possessed, or was aware of his control thereof

for a sufficient time to have been able to terminate his possession." (IPI Criminal No. 4.15.)

Defendant contends the failure to give the instructions denied him the opportunity to have the jury instructed on his theory of defense. Defendant's theory of defense as he articulated it was that the contraband found on his person and in his purse was either "planted" there or was not actually in his possession but was falsely testified to being there by the officers.

The trial court instructed the jury that before they could find defendant guilty of the crimes charged, the State had the burden of proving that the defendant "knowingly possessed" the contraband. The defendant argues that to merely instruct the jury that defendant must have "knowingly possessed" was not enough without the further requirement that the jury find that his knowledge existed at the time he received possession, or that he had sufficient time after he had knowledge of his possession to terminate possession. Defendant contends the first instruction is relevant because the omitted duty to which it refers is that duty found in the second instruction, to divest oneself of possession within a sufficient amount of time after one becomes aware of his possession.

At trial, the defendant testified that he had no knowledge of the contraband being in his possession when he was arrested, and that he did not observe the officers recover anything from his person or purse. If the jury believed either one of these possibilities, they could not have found that defendant "knowingly possessed" the contraband. The defendant presented no other evidence from which the jury could have inferred that the defendant might have been aware of the presence of the contraband but did not have a sufficient amount of time to terminate his possession. Without such other evidence, the meaning of the instructions becomes unclear and their submission to the jury could only be confusing and misleading. Supreme Court Rule 451(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 451(a)) requires that IPI instructions be used where relevant to the facts in the case unless they do not adequately state the law. Here the instructions the defendant sought to submit did not conform to the evidence presented in the case.

## V.

Lastly, defendant contends that improper remarks by the prosecutor in his closing argument denied him a fair trial. The prosecutor referred to the defendant as a liar because he told the police he was self-employed as a painter, while on the stand he testified that he was employed by an educational corporation. The defendant's objection that the statement was not according to testimony was sustained and the jury was instructed to

disregard it. The prosecutor again referred to the defendant as a liar because on the stand defendant denied ever knowing the witness, Leon Dale, but when Leon Dale walked into the courtroom, the defendant pretending to know Dale, turned around and said, "Hi, Leon, how are you doing?" The trial court sustained the public defender's objection on the basis that there was nothing like that in the record. The prosecutor responded that he was sure the jury heard and saw defendant do that. The court again sustained the objection.

■■ A conviction will not be disturbed on the basis of improper remarks made during closing argument unless it appears that the improper remarks constituted a material factor in the conviction (*People v. Berry* (1960), 18 Ill. 2d 453, 458, 165 N.E.2d 257); or resulted in substantial prejudice to the accused (*People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881); or the verdict would have been otherwise had the remarks not been made (*People v. Naujokas* (1962), 25 Ill. 2d 32, 38, 182 N.E.2d 700). In the instant case the jury was instructed that they consider only the testimony of the witnesses in making their determination of the facts, and that neither opening statements nor closing arguments could be considered as evidence. While the remarks of the prosecutor were improper, we cannot say that in view of the clear and convincing evidence of defendant's guilt the remarks influenced the result or that the verdict would have been otherwise had the remarks not been made.

Accordingly the judgment of the circuit court of Cook County is affirmed, the sentence is vacated and the cause is remanded to the circuit court for resentencing in accordance with the views expressed herein.

Judgment affirmed; remanded for resentencing.

STAMOS, P. J., and HARTMAN, J., concur.